[S. F. No. 3986.    In Bank.—December 2, 1907.]

ROBERT H. KEYES, Jr., a Minor, etc., Respondent, v. GEARY STREET, PARK, AND OCEAN RAILROAD COMPANY, Appellant.

NEGLIGENCE—INJURY TO PERSON IN DANGEROUS POSITION—ORDINARY CARE.—One is bound to use ordinary care to avoid injuring a person whom he actually discovers to be in a dangerous situation, although such dangerous situation is due solely to the negligence of such person.

ID.—STREET CABLE RAILROAD—NEGLIGENCE OF GRIPMAN—EVIDENCE.— In an action against a street cable railroad for damages for negligently running over a child, a verdict for the plaintiff will not be disturbed for insufficiency of the evidence, where there is a substantial conflict in the evidence as to whether the defendant's gripman, after actual discovery of the plaintiff's perilous situation, could have avoided the injury by the exercise of ordinary care.

ID.—IMPEACHMENT OF WITNESS—STATEMENTS MADE SUBSEQUENT TO INJURY.—In such an action, where the gripman, as a witness for the defendant, testified on his direct examination, in effect, that as soon as he saw the child he instantly let go the cable, set the brakes, and stopped the car as soon as he could, he may be impeached, in accordance with section 2052 of the Code of Civil Procedure, by evidence that, in a conversation had with the father of the child a day or so after the accident, he stated in effect that as soon as he saw the child he rang the gong, in the expectation that it would stop the child.

ID.—INCONSISTENT STATEMENTS—EVIDENCE OTHERWISE INCOMPETENT.— It is not a valid objection to evidence of inconsistent statements offered for purposes of impeachment that it also shows a declaration by the witness that would not otherwise have been competent evidence against the adverse party.

ID.—METHOD OF IMPEACHMENT—VARIANCE IN QUESTIONS.—Where such witness, after testifying on cross-examination as to the time, place, and persons present at the subsequent conversation with the father, answered in the negative to the question, "Did not you tell him that when you first saw the boy you rang the gong and thought you could frighten him?" the proper foundation is laid, under section 2052 of the Civil Code, to impeach him by showing that he did make such a statement; and where the questions asked of and answers given by the impeaching witness differed somewhat in verbiage from the statement as to which the foundation was laid, but were substantially the same in effect, and no specific objection to the method of impeachment was made, the variance will not warrant a reversal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Platt & Bayne, for Appellant.

H. H. Hutton, for Respondent.

ANGELLOTTI, J.—This is an action on behalf of an infant plaintiff for damages for personal injuries caused him by being struck by a moving car of defendant. Verdict and judgment were in his favor, and the defendant appeals from such judgment, and from an order denying its motion for a new trial.

1. The evidence given on the trial is sufficient to sustain the verdict upon the theory that defendant's gripman, after actual discovery of plaintiff's perilous situation, could have avoided the injury by the exercise of ordinary care. The well-settled rule that one is bound to use ordinary care to avoid injuring a person whom he actually discovers to be in a dangerous situation, although such dangerous situation is due solely to the negligence of such person, and is liable for the damage resulting from his failure to use such care, is not disputed. The claim is that the gripman did not actually discover the perilous situation of the child in time to avoid injuring him by the exercise of such care, and that immediately upon discovering it, he did all that he could to stop the car and prevent the injury. An examination of the record has satisfied us

that upon this question there is a substantial conflict of evidence, and under these circumstances the verdict of the jury and the ruling of the trial court on motion for a new trial are conclusive upon us. The case here presented is very different from that of *Bennichsen* v. *Market St. Ry. Co.*, 149 Cal. 18, [84 Pac. 420], relied on by defendant, where there was no evidence at all to show that the· motormon saw the child until after the accident had occurred, and the contention was that he would have seen her had he exercised reasonable care.

2. It is claimed that the trial court erred to defendant's prejudice in admitting evidence as to a statement made the day after the accident by the gripman of the car to plaintiff's father. The gripman was called as a witness by the defendant, and, on his direct examination testified: ''The moment I saw the child I released the rope. I had been watching for the crossing. *When I saw the young boy coming, I released my cable and set my brakes as quickly as possible.* I stopped my dummy in about eight or nine feet. . . . Before I saw the child I was looking straight for the crossing and rang my gong in case any team should get in my way. . . . I did let go of the cable with my grip; *when I saw the child I instantly let go and stopped the car as quick as I could.''* On cross-examination, he testified: ''I had hold of the gong when I first saw the child, and rang the gong for the crossing, and saw the boy at the same time. It is not a fact that I thought the gong would scare the boy away; I have had too much experience for that. Mr. Keyes (the plaintiff's father) came out to my house the day after the accident happened. I do not believe there was anybody there at the time when he first came in.'' The witness was then asked: ''Did not you tell him that when you first saw the boy you rang the gong and thought you could frighten him?'' This was objected to by defendant as incompetent, on the ground that the statement was not a part of the *res gestæ,*'having been made after the accident occurred. The objection was overruled, and the witness answered that he did not make any such statement. Mr. Keyes was called in rebuttal, and testified that he had a conversation with the gripman at the gripman's residence the day or the second day after the accident. He was then asked: ''I have asked you whether or not he told you at that time

he saw this boy and rang the gong, thinking that the gong
would stop the child's running?'' This was objected to as in-
competent "on the ground that it was not a part of the *res·
gestæ.''* Plaintiff's counsel replied that he was attempting
to show that the gripman had made contradictory statements.
The objection was then overruled, and the witness answered:
"Yes, sir; he did; he made an assertion.'' The witness was
then asked: "What did he say?'' This was objected to upon
the same ground, and the objection having been overruled,
the witness answered: "The exact words. I do not know that
I could recall them, but they were to the effect.'' The defend-
ant here further objected that the witness was stating simply
his conclusion. The witness was then asked: "Can you give
me the substance of what he told you?'' The same objections·
were repeated and overruled, and the witness answered: "The
substance was that he rang the gong, and that he was under·
the impression that the child would stop or did stop.''

We see no error in any of the rulings of the court in this
matter. Our law provides: "A witness may also be impeached
by evidence that he has made, at other times, statements in-
consistent with his present testimony; but before this can be
done the statements must be related to him with the circum-
stances of times, places, and persons present, and he must be
asked whether he made such statements, and, if so, allowed to
explain them. . . .'' (Code Civ. Proc., sec. 2052.) It is un-
necessary to cite authorities to the proposition that, in accord'
with this rule, a witness for an adverse party who testifies on
his direct examination as to a matter material to the con--
troversy, may be shown, in the manner prescribed by the
section quoted, to have made statements inconsistent with his·
testimony so given on direct examination. The only possible
prejudicial effect as to defendant of the evidence in ques-
tion, was that it tended to show an admission on the part of'
the gripman that he did not upon discovering the child's
perilous situation, immediately endeavor to stop the car, but
relied on the ringing of the gong to warn the child away.
This is the effect claimed for the evidence by learned counsel
for defendant, and it may be conceded that such was its.
effect. As we have seen, however, the gripman had testified
on his direct examination: "When I saw the young boy com-
ing, I released my cable and set my brakes as quickly as.

possible. . . . When I saw the child I instantly let go and stopped the car as quick as I could.'' This was most material evidence in support of the defendant's claim that upon actual discovery of plaintiff's perilous situation, the gripman exercised the required care to avoid injuring him. Giving to the evidence in question the effect claimed for it by defendant, such evidence clearly showed a statement made at another time by the witness regarding the same matter, which was inconsistent with the evidence given by him for the defendant upon his direct examination. It was, therefore, upon laying the proper foundation, admissible for the purpose of impeaching the witness, and discrediting the testimony given by him in that regard upon his direct examination. Counsel, in discussing the question of the admissibility of this evidence, have not referred to these particular portions of the direct examination of the witness, but they appear to us to so completely answer the objections made by defendant, that we have not considered other reasons urged by plaintiff in support of the rulings.

It can constitute no valid objection to evidence showing inconsistent statements by a witness that it also shows a declaration by the witness that would not otherwise have been competent evidence against the party. Learned counsel for defendant is undoubtedly right in his contention that plaintiff was not entitled to show any negligence on the part of defendant by any admission or statement of the gripman made after the accident. But he did have a right to discredit the gripman's affirmative evidence given against him as to the exercise of all proper care, by showing other statements made by him inconsistent with such evidence. The evidence was admissible solely for that purpose, and doubtless the trial court, if requested by defendant, would have instructed the jury that it could be considered only for that purpose. The instructions are not contained in the record, and for aught we know the jury was so instructed.

We have discussed the objection most strongly relied on by defendant, in fact the only objection made in the original briefs. In the answer to the petition for a hearing in this court after decision in the district court of appeal, it is urged that proper foundation for the impeaching testimony was not laid. The foundation was certainly laid as to the statement

contained in the question asked on the cross-examination of the gripman, viz: "Did not you tell him that when you first saw the boy you rang the gong and thought you could frighten him?" The circumstances of time, place, and persons present had already been recited, and the witness answered in the negative. The alleged statement contained in the question asked the impeaching witness was not precisely the same in words as that contained in the question asked the gripman, but it was substantially the same in effect, and although it was stated by counsel for plaintiff that the evidence was offered for the purpose of impeachment, no specific objection that the proper foundation had not been laid for the precise question asked was made. Practically, no answer was given to this question. The answer finally given by the impeaching witness as to what the gripman told him on the occasion in question showed a statement differing somewhat in verbiage from the statement as to which the foundation was laid, but it was substantially the same in effect. No specific objection to the method of impeachment was made, the only objection to the particular question calling forth this answer being that it "was incompetent and not part of the *res gestæ.*" No motion to strike the answer out was made, or any suggestion that the foundation laid did not fully cover the matter testified to. We are satisfied that for all practical purposes the statement testified to by the impeaching witness was substantially the same as the statement contained in the question asked the gripman, and that the gripman could not have been misled in the matter by the form of the question asked him. While we see nothing warranting a reversal on account of these matters, we do not desire to be understood as approving the practice here followed. The proper practice in impeaching a witness by showing other statements inconsistent with his testimony is shown by the opinion of this court in *People* v. *Nonella,* 99 Cal. 333, [33 Pac. 1097].

The judgment and order are affirmed.

Shaw, J., Sloss, J., and Henshaw, J., concurred.