[Civ. No. 12095. Second Appellate District, Division Two.—May 8, 1939.]

HENRY BARSHA et al., Respondents, v. METRO–GOLD-WYN–MAYER (a Corporation) et al., Appellants.

Loeb & Loeb, Milton H. Schwartz and Herman F. Selvin for Appellants.

Carpenter, Babson & Fendler and Harold A. Fendler for Respondents.

WOOD, J.—A judgment was entered against the corporation defendants in the sum of $10,000 upon the return of the verdict of a jury. The appeal is prosecuted by the corporation defendants from the judgment and from the order denying their motion for the entry of judgment in their favor notwithstanding the verdict. A number of individual defendants were named in the complaint but as to them the action was dismissed.

Plaintiffs wrote a motion picture scenario which they titled "High Fever". A copy of plaintiffs' manuscript was delivered to appellants on January 2, 1935, for the purpose of examination and reading, appellants agreeing that if they did not purchase the manuscript they would return it to plain-

tiffs. The manuscript was delivered to Irving Thalberg, production manager for appellants, by Mrs. Edna Schley, an agent, who, to refresh her memory, while testifying read from her diary entry: "I also gave him (Thalberg) story for the Marx Bros. 'High Fever' by Barsha and LaSage (Weissmann). This is a very likely original for them and Mr. Thalberg will read personally." The manuscript remained for five months with appellants, who refused to purchase it and returned it to plaintiffs. Thereafter appellants produced a motion picture under the title "A Day at the Races". It is charged by plaintiffs that appellants deliberately and unlawfully copied and appropriated their literary composition and produced a photoplay containing substantial portions of the composition which was their exclusive property; that appellants "have inextricably intermingled the same with other literary composition and moving picture scenario, but which defendants have cunningly and shrewdly combined therewith". It was shown in evidence that Mr. Thalberg, since deceased, took active part in the production of the picture "A Day at the Races". One of his assistants testified: "Q. Did Mr. Thalberg have anything to do with the story 'A Day at the Races?' A. Yes. He helped in construction. He helped in suggestions, and he helped in the usual manner, in which all producers help in regulating and superintending direction of author's work."

Appellants contend that the voluntary dismissal of the action as to the individual defendants amounted to a *retraxit* and that they were thereby released from liability. The motion for dismissal was made in open court after it had appeared from depositions and otherwise that the individual defendants were not joint tort-feasors. The motion was made for the sole purpose of releasing plaintiffs from liability for costs to the persons dismissed from the action. Plaintiffs testified that they had not received anything whatever in satisfaction of the claim upon which the action is based. The dismissal of the action as to one tort-feasor, no satisfaction having been received, does not release the others. (*Shea* v. *City of San Bernardino,* 7 Cal. (2d) 688 [62 Pac. (2d) 365]; *Drinkhouse* v. *Van Ness,* 20 Cal. 359 [260 Pac. 869].)

As is to be expected in such cases the briefs contain much discussion on the question of the extent of the similarities

between plaintiffs' manuscript and the picture produced by appellants. A special production of ''A Day at the Races'' was viewed by the jury and at the request of both parties the members of this court also have seen a presentation of the picture. From the manuscripts contained in the record and from the picture itself it is to be observed that both the plaintiffs' manuscript and the manuscript for the picture were prepared with the idea in view of having certain actors known as the Marx Brothers play the important parts. In both, a wealthy dowager conceives the idea that a certain veterinarian (Groucho Marx) has great medical ability, and she insists upon the veterinarian becoming the head of a sanitarium which she agrees to assist financially and does in fact assist financially because the veterinarian is installed as chief of staff; the other Marx brothers (Chico and Harpo) purport to act as assistants to the veterinarian, although all are ignorant of proper medical practice; they perform fake examinations, sing while performing an examination, confuse gas service station equipment with hospital equipment and cause operating rooms to be flooded with water; the treatment which the veterinarian gives to the wealthy widow at the sanitarium consists largely of holding her hand and demonstrating spurious affections for her, but whenever he can escape from the widow he makes love to prettier women; one of the female characters attempts to betray the veterinarian for the benefit of another man, who seeks to profit personally by undermining the veterinarian's influence with the widow, expose him as a quack and thus destroy the sanitarium; the sanitarium is in financial difficulties, from which it is finally saved (by the outcome of a football game in plaintiffs' manuscript and of a horse race in the photoplay); although the veterinarian is exposed as a faker and his philandering becomes known, the widow continues to pursue him until she finally succeeds in winning him.

It is contended on behalf of appellants that the implied finding of the jury that appellants made use of their composition is not supported by the evidence. Their argument is based largely upon the testimony of writers in the employ of appellants who testified that they did not use plaintiffs' manuscript. It is within the province of the jury to draw reasonable inferences from the facts shown in evidence and the effect of inferences reasonably drawn is not destroyed

as a matter of law by the testimony of witnesses which may be considered as contradictory thereto. An inference which is supported by the evidence and not opposed to human experience and reason cannot be disturbed by an appellate court. (*Rideout* v. *City of Los Angeles*, 185 Cal. 426 [197 Pac. 74].) ■ Notwithstanding the testimony of the writers the issue of fact remained for the determination of the jury who were the sole judges of the weight of the testimony and who were not bound to accept testimony as true if they were not convinced of its truth. (*Bushnell* v. *Yoshika Tashiro*, 115 Cal. App. 563 [2 Pac. (2d) 550].) Uncontradicted denials on the part of employees of appellants did not compel the conclusion on the part of the jury that there had been no copying of plaintiffs' manuscript. In *Edwards & Deutsch Lith. Co.* v. *Boorman*, 15 Fed. (2d) 35, (C. C. A. 7th) it is said: "Appellee's position, however, is that having explicitly denied that they copied appellants' production and having sworn positively that they got their ideas from other sources and no one having sworn to the contrary, the court was bound to find no copying and therefore no infringement. The cases are numerous where such situations have arisen and the same claim has been made without avail." From many facts shown in evidence, particularly the retention of plaintiffs' manuscript during the period of five months by the person in charge of the production of appellants' picture, the making of numerous suggestions by him in its production and numerous similarities appearing in the two plays, it is manifest that the finding of copying by the jury is supported by the evidence.

■ If such similarities be shown as to justify an inference of copying of protectible material it is necessary to prove only that a substantial part of plaintiffs' manuscript was copied to sustain liability on the part of appellants. Although there can be no property in an author's ideas, "there may be literary property in a particular combination of ideas or in the form in which ideas are embodied". (*Fendler* v. *Morosco*, 253 N. Y. 281 [171 N. E. 56].) ■ The test is stated by appellants to be whether "the two works, when compared, show such pronounced similarities of substantial portions of protectible material, i. e., of details, sequence of events, and manner of expression and treatment, as to warrant the inference of copying." Measured by this test we are satisfied

that the jury's implied finding of unlawful appropriation is sustained by the evidence. The similarities hereinabove set forth, together with numerous incidents contained in both the manuscript and the photoplay, are sufficient to sustain a finding by the jury that appellants have used the same unique combination of ideas devised by plaintiffs centering around the sanitarium situation, the same combination of humorous scenes and characters and a substantial number of the same situations and incidents in similar sequence. ■ It is true that many changes were made in the photoplay as actually produced, but a subsequent author cannot avoid his liability by making changes or omissions from or additions to the original plot. He cannot excuse his unlawful appropriation by a showing that there was much of the original work which he did not appropriate. (*Maurel* v. *Smith,* 220 Fed. 195; *Sheldon* v. *Metro-Goldwyn Pictures Corp.,* 81 Fed. (2d) 49.)

■ Appellants complain of the ruling of the trial court admitting the testimony of one of the parties to the effect that Mrs. Schley had told him that Mr. Thalberg had told her that he (Thalberg) was interested in plaintiffs' manuscript. The testimony was undoubtedly hearsay but was admissible as impeachment, it having been shown that plaintiffs were surprised at the testimony of Mrs. Schley, who had been called as their own witness, and the proper foundation for impeachment having been laid. If appellants had desired to have Mrs. Schley's testimony limited to its purpose of impeachment an appropriate instruction should have been requested by appellants so that the jury could have been informed that her statements must not be taken as proof that Mr. Thalberg had in fact read plaintiffs' manuscript. No such instruction was requested. "Failure to ask for an instruction limiting the effect of evidence admitted generally waives objection thereto, and complaint cannot be made for the first time on appeal." (10 Cal. Jur. 817; *Keyes* v. *Geary Street Ry. Co.,* 152 Cal. 437 [93 Pac. 88]; *Liebrandt* v. *Sorg,* 133 Cal. 571 [65 Pac. 1098].)

■ Some of the instructions of the trial court are criticized by appellants, the claim being made that the instructions did not clearly define the material in plaintiffs' manuscript which is protectible. We are satisfied that in the numerous instructions offered by the parties and given by the court the jury was fully and fairly instructed on the subject. How-

ever, the court of its own motion gave instruction No. 17 which is doubtless subject to criticism. This instruction is as follows: ''You are further instructed that it is claimed by plaintiffs that defendants retained plaintiffs' literary composition in their possession for a period of five months, and became fully informed, and had full knowledge of the contents thereof. In other words, it is claimed that defendants had 'access' to the manuscript, as the law books put it. In this respect, you are advised that if plaintiffs make out a *prima facie* case of 'access'—in other words, if they prove that the opportunity to copy existed at about the proper time, you must consider such evidence in connection with defendants' evidence that, although having access, they did not acquaint themselves with its contents, and then determine in your minds which evidence preponderates, or has the more convincing force. If the evidence shows a marked resemblance between the original and the alleged infringing work, a presumption of piracy arises, even though there be no eye witness proof of copying, or direct evidence thereof. However, if you believe from all the evidence that, although having access to plaintiffs' manuscript, defendants, or any agent, officer or employee of defendants, did not acquaint themselves with the contents, or the original or novel arrangement, if any, thereof, of plaintiffs' manuscript, you cannot return a verdict in favor of plaintiffs under the issues in this case, but you must under such belief on your part, find for the defendants. In other words, if the evidence on the part of the defendants, which has been received in this case, balances the evidence of plaintiffs in convincing force, or preponderates over the evidence offered by plaintiffs, your verdict must be for the defendants. Manifestly, under the issues in this case, if defendants or their agents or employees, did not know the contents or arrangement of what plaintiffs had written, they could not intentionally pirate or plagiarize the same. Furthermore, if the agents of defendants, in the preparation for screen production of the photoplay 'A Day at the Races', actually used, arranged, or employed any of the themes, words, ideas, or locales of the plaintiffs' scenario 'High Fever', before plaintiffs' scenario was submitted to them, or they became acquainted, if at all, with its contents or arrangements, then plaintiffs' words, ideas, themes or locales were not original, and cannot be protected in this action; but before you can find for defendants,

564

it must appear that they publicly released their photoplay by production or publication upon the screen without knowledge of or before acquaintance with the material or arrangement of its contents as submitted by plaintiffs''.

Complaint is made of that part of the instruction in which the court states ''a presumption of piracy arises, even though there be no eye witnesses of copying or direct evidence thereof''. Plaintiffs point out that the language criticized is almost identical with the language used in *Encyclopedia Britannica Co.* v. *American Newspaper Assn.*, 130 Fed. 460, at 464, where the court states: ''Substantial identity, or a striking resemblance between the work complained of and that for which protection is claimed, creates a presumption of unlawful copying, which must be overcome by the defendant.' In Copyright Law and Practice by Drone at page 660, the author states: ''Identity between the alleged infringing work and copyrighted work raises the presumption that the one was copied from the other.'' Under the California practice the court, instead of using the word, presumption, should have instructed the jury that it was within their province to draw an inference of piracy if the evidence showed a marked resemblance between the two works. It would not be reasonable to hold, however, that the jury was misled by the use of the word, presumption, as they were clearly told in the same and other instructions that a verdict could not be rendered in favor of plaintiffs unless the jury should find from a preponderance of the evidence that appellants did in fact copy protectible material from plaintiffs' manuscript. Inferences and presumptions are both recognized as indirect evidence (Code Civ. Proc., sec. 1957), and the line of demarcation between them is often difficult to draw. To use the language of Justice Thornton in *White* v. *White*, 82 Cal. 427, 438 [23 Pac. 276, 7 L. R. A. 799], the distinction is ''sometimes very thin''. It seems inconceivable that the jury could have been misled by the use of the word, presumption, instead of the word, inference, when our highest courts have met with difficulty in accurately deciding their use and application. In *Mudrick* v. *Market Street Ry. Co.*, 11 Cal. (2d) 724, 734 [81 Pac. (2d) 950, 118 A. L. R. 533], the court was considering an instruction in which the word, presumption, was used instead of the word, inference, in stating the rule of *res ipsa loquitur*. Mr. Justice Curtis, speaking for the court, pointed out that in

such a situation, "no decision has been called to our attention in which a judgment has been reversed by reason of the erroneous use of these words". The court in its opinion further stated that "these terms are often erroneously used interchangeably, and as conveying the same meaning. We find that many lawyers and courts as well make this same mistake. We question whether the ordinary layman, to say nothing of many members of our profession, clearly comprehends the difference in the meaning of these two expressions."

 Instruction No. 17 is also subject to criticism ·in that in the last several lines of the instruction the jury were told that before they could find for appellants it must appear that they released their photoplay without knowledge of the material which had been submitted to them by plaintiffs. This part of the instruction is inconsistent with other parts of the same and other instructions given by the court. An element was omitted, apparently inadvertently, by the trial court in the last part of instruction No. 17, but in numerous other instructions it was made clear to the jury that if appellants had independently conceived and prepared a composition which was not taken or copied from plaintiffs' work they would not be liable to plaintiffs for damages. In this case an unusually large number of instructions were given and the trial court was not required to state all of the law applicable to the action in one instruction. At the commencement of his instructions to the jury the judge stated: "Mr. Reporter, the instructions of the court will be largely oral, so I will ask you to be kind enough to take them all down in shorthand." The judge then proceeded to instruct the jury at length but in giving instructions which were "largely oral" he made the inaccurate statement above mentioned. The instructions, which considered together were fair to both parties, contained nothing to justify a contention that the jury might have been confused in reaching the verdict. From the commencement of the trial to its termination they were thoroughly impressed with the fact that the question for their determination was whether defendants had unlawfully appropriated the literary property of plaintiffs. They would have been more than stupid if they believed that they could return a verdict for plaintiffs without a finding on their part that appellants had used plaintiffs' composition in the preparation of the photoplay. An erroneous statement in one instruction will

not necessitate a reversal of a judgment where the instructions taken as a whole do not mislead the jury. (*Mosesian* v. *Crown Cleaners and Dyers,* 122 Cal. App. 248 [10 Pac. (2d) 193]; *Callet* v. *Alioto,* 210 Cal. 65 [290 Pac. 438].) "In construing the charge of the court, it must be viewed in the light of common understanding, and the practical administration of justice should not be defeated by a too rigid adherence to close and technical analysis of the whole or any part thereof." (*Hayden* v. *Consolidated Min. etc. Co.,* 3 Cal. App. 136, 139 [84 Pac. 422].)

The trend of the latest decisions of reviewing courts, especially since the adoption of section 4½ of article VI of the California Constitution, is to refuse reversals of judgments because of errors in instructions unless it affirmatively appears that the appealing party has suffered substantial injury. We see no occasion for reversing plaintiffs' judgment because of the instructions.

The judgment and order are affirmed.

Crail, P. J., concurred.

McComb, J., dissented.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 6, 1939.