## BACHMAN et al. v. BELASCO.

(Circuit Court of Appeals, Second Circuit. May 12, 1915.)

No. 143.

1. COPYRIGHTS ☜65—INFRINGEMENT—SIMILARITY.

A dramatic composition, having a dual personality for its motif, *held* not an infringement or plagiarism of complainants' copyrighted play, having the same motif; the material similarities being readily accounted for by reference to the common source, which suggested to both writers the situations presented.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 62; Dec. Dig. ☜65.]

2. COPYRIGHTS ☜65—INFRINGEMENT—SITUATIONS TAKEN FROM COMMON SOURCE.

The person first presenting, in a copyrighted play, situations naturally suggested by a common source, cannot prevent others from also presenting such situations, provided they get the idea from a common source, and not from the copyrighted play.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 62; Dec. Dig. ☜65.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, dismissing the bill in a suit to enjoin alleged infringement of copyright. Affirming decree in 224 Fed. 815.

Charles O. Maas, of New York City (Tupper & Kavanagh, of New York City, of counsel), for appellants.

Dittenhoefer, Gerber & James, of New York City (A. J. Dittenhoefer and Dudley F. Phelps, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] The complainant Bachman wrote and duly copyrighted a dramatic composition entitled "Etelle." The keynote of the play was dual personality, a phenomenon which had been exploited by Dr. Morton Prince in a book detailing his scientific study of the case of a lady, whom he calls Miss Beauchamp (not the real name of his patient), and by John Corbin in a story published in the Ladies Home Journal, entitled "How One Girl Lived Four Lives." Miss Bachman sent her play to defendant; it remained in the possession of his reader for six weeks, and was then returned with a letter stating that defendant had read the play, but regretted that it was not available. The testimony shows that this was what the District Judge describes as "a polite way of declining the manuscript." Defendant and his reader both testified that Mr. Belasco did not read the play.

Mr. Edward Locke wrote a dramatic composition called "After Many Days" with the same motif—a dual personality—which was

accepted by defendant and performed on the stage of his theater, the name being changed to "The Case of Becky." Locke testified that he did not see or know of Miss Bachman's play when he wrote his own. Plaintiff's contention is that the similarities between the two are such as to demonstrate the "Case of Becky" was a plagiarism from "Etelle." Appellant's brief fairly states the issue as follows:

"The paramount question is whether the similarities existing between the two plays are mere coincidences arising because of the development by two playwrights of a central idea taken from a common source, or whether these similarities are such as to overbalance the testimony of the defendant's witnesses and reveal plagiarism, and, further, if there was not piracy, was there such an unintentional infringement of complainant's copyright as to justify the equitable relief which complainants seek?"

We have read Corbin's story, have looked over Dr. Prince's book, and have read both plays, and have reached the conclusion that in the story and the book there is enough to suggest the plot, incidents, situations, and dialogues of both plays, without any mutual assistance, the one from the other. We find no similarities between the two plays sufficient to suggest plagiarism by the author of the later one. The parallel columns in the brief of appellant are not only unpersuasive, but in many parts silly. For instance the statements that the action of both plays begins "in the morning" with "one man on the stage"; that in one play the leading lady says to her fiancé, "I'm so glad to see you," in the other, "I am so pleased to see you"; that in one play a physician says of the heroine, "She is in a highly nervous condition," in the other a similar character says of the villain, "He will probably be in a highly nervous state"; that in the one play a comic character says, "Ain't it awful, sir?" and in the other a serious character says, "Oh, it is awful." The first of these phrases, changing merely the last word to "Mabel," was common property here when both plays were written. There are several pages of these inconsequential similarities.

[2] As to the similarities of any real importance, all of them are readily accounted for by reference to the common source. We see no reason to doubt the testimony of Mr. Locke, the writer of the second play, that he had never seen or heard of plaintiff's play, when he wrote his own. The common source naturally suggests to any one particular situations; for instance, the prominent one in both plays, that an attractive young lady with a dual personality, one serious and conventional, the other frisky and highly unconventional, may find herself placed in situations calculated to injure her reputation. This does not entitle the person who first presents that suggested situation in a copyrighted play from depriving other persons to whom the same situation naturally presents itself, upon perusal of the narrative which is the common source, from also presenting it in a book or a play, provided that the later one gets the idea from the common source, not from the copyrighted play.

The decree is affirmed, with costs.