## SIMONTON v. GORDON et al.

(District Court, S. D. New York. April 7, 1924.)

1. Copyrights ⬡83—Opinions of experts respecting infringement cannot be substituted for court's opinion.

Opinions of experts as to alleged infringement of copyright are useful in directing court's attention to alleged similarities in theme and atmosphere, or to the supposed identity of characters, but they cannot be substituted for court's opinion.

2. Copyrights ⬡83—Novel of West African life held not infringed by play dealing with same subject-matter, having incidental resemblances.

A copyrighted novel depicting life in West Africa, referring to the debilitating effects of the equatorial African climate, and dealing with the conventional stock figures of traders, missionaries, and black servants, and with the prevailing customs, held not shown to be infringed by a play dealing with the same subject-matter, having merely incidental resemblances, so as to warrant a preliminary injunction.

3. Copyrights ⬡55—Test of infringement stated.

The test of infringement in books dealing with stock incidents and characters is whether the associations and grouping of these incidents and characters are such as to make a new conception or novel arrangement, or whether the conception of the author seeking protection has in fact been appropriated.

4. Copyrights ⬡85—Facts should show right to preliminary injunction.

To justify grant of a preliminary injunction against copyright infringement, the facts should be persuasive, and point as nearly as may be to the absolute right of complainant to the relief sought.

In Equity. Suit by Ida Vera Simonton against Leon Gordon and others. On motion for preliminary injunction. Motion denied.

O'Brien, Malevinsky & Driscoll, of New York City, for complainant.

W. Herbert Adams, of New York City, for Leon Gordon, Earl Carroll, Milnor Productions, Inc., Conway Wingfield, Frederick Roland, J. Malcolm Dunn, Curtis Karpe, Tracy Barrow, Richard Stevenson, Annette Margules, 63rd St. Theatres, Ltd., Inc., John Cort, and Chief White Hawk.

Almy, Van Gordon & Evans, of New York City, for Greenwich Village players, Inc., and Marguerite A. Barker.

WINSLOW, District Judge. This action is brought for an alleged infringement of a copyright of a book entitled "Hell's Playground." This motion is made by the complainant for an injunction pendente lite restraining the defendants from further producing a play entitled "White Cargo," upon the ground that the play is an infringement of the book. The complainant is the author of the book "Hell's Play-

ground," which was published and copyrighted originally by Moffat, Yard & Company. The book purports to be an account of the author's experiences, and of the conditions of life on the West Coast of Africa between the years 1906 and 1909.

The book, of 447 pages, was published in or about October, 1912, and was duly copyrighted in or about June, 1913, by the publishers. The complainant, by reassignment, is now the owner of the copyright. It is alleged that the defendant Leon Gordon, in or about January, 1920, entered into negotiations with the author of the book to dramatize the same on condition that such dramatization was to be completed within nine months from January, 1920. This was not done, and the agreement, by mutual consent, lapsed and became void.

[1] In or about November, 1923, the defendant Gordon produced the play "White Cargo" in the city of New York, now alleged to be an infringement of the complainant's novel. The other defendants are said to have aided and participated in the production, for profit. The book and manuscript of the play are before the court, and, in addition thereto, there are voluminous affidavits for and against the motion, besides analyses of both productions submitted by complainant and defendants. The complainant submits the opinions of so-called experts as to the alleged infringement. Such conclusions of experts are useful only in directing the court's attention to alleged similarities in theme and atmosphere, or as to the supposed identity of characters appearing in the book and the play. These opinions cannot, however, be substituted for the court's opinion. In addition to reading the record, the court has viewed the production of the play.

[2] Putting aside the matters in the record which are extraneous conclusions, or merely argumentative, the sole question for the court to determine is whether the play has been taken from the book. If the plot, the structure, and the dialogue of the play are so similar to the book as to suggest that the conception of the complainant is the foundation of the play, the conclusion might result that the author of the play has, indeed, based his composition on the book. Both compositions assume to deal with West African life. The book deals with the French Congo; the play with Nigeria. The defendant Gordon lived in South Africa in 1914 and 1915. He states that he did a good deal of writing while there, and was also connected with the theatrical business in Cape Colony, Orange Free State, Natal, and the Transvaal. Both productions deal with local color, and constantly refer to the debilitating effects of the equatorial African climate, and with conventional stock figures, traders, missionaries, black servants, and the prevailing customs.

[3] There have been a number of books written, dealing with African life, and it would be strange indeed if, when dealing with incidents and stock characters, there would not be found some similarity in books or plays having the same locals. The test of infringement, where it is alleged in such cases, is whether the association and grouping of these characters and incidents is such as to make a new conception or novel arrangement, so as to warrant the inference that the subject-matter and local color are responsible for the supposed similarity, or whether, on the other hand, the conception of the author seeking pro-

tection has in fact been appropriated by the alleged infringer. As was well said by Judge Mayer in Stevenson v. Harris (D. C.) 238 Fed. 432, at page 436:

"It will never do to hold that, because an incident here or there is used in the later production which was used in another relation and situation in the former copyrighted book or play, therefore the later production infringes the copyright of the former."

Probably one might search a long while and not find a play that has not something in it that is to be found in some previous publication, either in drama or fiction or poetry. The problem of the court is to determine what the fundamental theme is and to see whether it has been appropriated. Underhill v. Belasco (D. C.) 254 Fed. 838; Bachman v. Belasco, 224 Fed. 817, 140 C. C. A. 263.

In the instant case, the theme of the novel is the moral weakening of a man leaving his English home and establishing himself as a trader in Africa. The breaking off of his engagement with one left at home is followed by his successful material progress, parallelling his moral degradation, due to his illicit relation with a negress, followed by her later infidelity, as it is characterized, resulting in a brutal beating at the man's hands. This man is the hero of the book, if such a title may be applied to such a character. In the play, one of the characters, a white man, enters into the marriage relation with a half-caste. He is not the chief character; but, in any event, the alleged marital relation is disastrous.

[4] It is unnecessary here to review the descriptive details of the book, many of which are repulsive, nor yet to further analyze the theme of the play. It may be that the author of the play consulted the complainant's book, as well as other publications. He makes affidavit that he did consult with one Maloney, said to be an authority on African conditions, and others. From the nature of things, there was certain to be some resemblance; but the question is whether the writer of the play has used the work of the author of the book without any independent work himself. While there are scattered and incidental resemblances between the two works, the court is of the opinion that the complainant has not made that clear and convincing showing which, in this circuit, has been required in order to justify the granting of a preliminary injunction. The facts in any particular case should be persuasive, and point "as nearly as may be to the absolute right of the complainant to the relief sought."

Motion for preliminary injunction denied.