## CHRISTIE v. HARRIS et al.

District Court, D. New York.

May 19, 1942.

Loria & Martinson, of New York City, for plaintiff.

Greenbaum, Wolff & Ernst, of New York City (Alexander Lindey and Harriet F. Pilpel, of New York City, of counsel), for defendant Edna Ferber.

Howard E. Reinheimer, of New York City (Jack J. Katz, of New York City, of counsel), for defendant George S. Kaufman.

O'Brien, Driscoll & Raftery, of New York City (Benjamin Pepper, of New York City, of counsel), for defendant Sam H. Harris.

CONGER, District Judge.

This is an action for alleged infringement of plaintiff's copyrighted play.

Plaintiff Madge Christie and Renita Randolph sometime prior to November, 1930, together wrote a play entitled "Thru the Looking Glass". On or about the 28th of November, 1930, the said Renita Ran-

dolph caused said play to be copyrighted and on or about said date there was issued to her a certificate of copyright by the United States Register of Copyrights.

Sometime during the year 1935 said Renita Randolph gave to the plaintiff all her right, title and interest in and to said play and subsequently about August 2, 1939, the said Renita Randolph ratified the same in writing. The plaintiff is now the sole owner and holder of the copyright title to said play.

Plaintiff claims that the defendants Sam H. Harris, George S. Kaufman and Edna Ferber infringed against plaintiff's play when they wrote and produced the play "Stage Door".

This latter play was written by defendants George Kaufman and Edna Ferber and produced and exhibited by defendant Sam Harris at the Music Box Theatre in New York City. The complaint charges that the play Stage Door is a deliberate piracy and infringement of plaintiff's play.

There are two other defendants named. They are charged with having something to do with the sale, publication or distribution of the play Stage Door. It will not be necessary to refer to them or their connection with the alleged infringing play.

The question before the court is whether defendants Kaufman and Ferber in writing the play and the defendant Harris in producing it were guilty of infringement.

The law is well settled that there must be an actual copying whether wilful or unintentional, made possible by defendants' access to plaintiff's copyrighted material. Seltzer et al. v. Sunbrock et al., D.C., 22 F.Supp. 621.

Here all three defendants are jointly charged with access to plaintiff's play. The complaint (paragraphs 12 and 13) alleges that on - or about January, 1931, Renita Randolph delivered the manuscript of the play Thru The Looking Glass to defendant Sam Harris and subsequently the said Harris delivered the same to defendants Ferber and Kaufman, who read and studied it. This is the charge of direct access made by the pleadings. On the trial no such evidence was brought forth. The uncontradicted proof was that Miss Randolph did deliver the play to Harris in the early part of 1931; that he kept it for some time, when it was finally returned. There is no proof that Miss Ferber or Kaufman ever saw it. There was a failure of proof on this point. Plaintiff attempted to prove by circumstantial evidence that this might all have happened, but the circumstances so proven do not warrant any such conclusion. The most I can deduce is that Harris had the play in his possession. He may have read it. There is nothing to warrant my finding that he ever showed the manuscript of the play to defendants Ferber and/or Kaufman. Both defendants Ferber and Kaufman have denied that they ever saw it or read it until preparations were being made for this trial.

This is not a case of unconscious copying; not a case of faulty memory. This case does not come within the principle laid down in Fred Fisher, Inc., v. Dillingham, et al., D.C., 298 F. 145; plaintiff's play had never been produced, had never been given out to the public. As far as the record shows there was only one copy and that had been given to Harris to read. Defendants could only have had access to plaintiff's play through this copy while it was in Harris' office. Both deny ever having seen it. I see no reason to doubt their testimony.

While plaintiff has failed to prove access by direct evidence this does not necessarily end her case. Direct access is hard to prove. Access may be inferred from the similarity of the two compositions. Mere similarities, however, are not enough. An independent reproduction of a copyrighted work is not infringement. Where similarities or identities are relied upon they must do more than engender a suspicion of piracy, they must establish piracy with reasonable certainty.

In the last analysis, I must decide whether or not defendants' play is so like plaintiff's, that one may reasonably infer that it was copied therefrom.

In support of her contention on the question of identity, plaintiff served a Bill of Particulars of alleged similarities and furnished the court with a document entitled "additional supplementary analysis".

The combined documents consist of 186 pages. In them plaintiff has digested and dissected to the minutest detail each of the plays. I confess that these documents have been of little help to me. I have labored through them with great care but have not been impressed. A great many of the alleged similarities are strained, forced and in many instances not correct. The only impression made upon me was

that plaintiff was grasping at straws to prove her case. Space will not permit my going into this with particularity. One instance, among many, stands out. I cannot help but refer to it. I quote from page 16 of the Bill of Particulars:

"(ppp) In both plays, at Cleo's–Kaye's very first appearance, there is an implication, a premonition of her tragic end,

(1) In Thru the Looking Glass, Act 1—page 3,

Cleo says, 'Holy Christ! keep that shade down, can't you?'

In Stage Door, Act 1—page 15,

Kaye says, 'But I've got to come in tonight. I've got to.' "

At this point, I feel, I should state that in plaintiff's play there is much of the above type of language, which one does not find in the other.

After reading and studying these two documents, I cannot help but feel that the Bill and the additional analysis are a tribute to the plaintiff's ingenuity rather than an actual reflection of reality. Rose v. Connelly et al., D.C., 38 F.Supp. 54. This method of proving identity has been frowned on in the courts. See Bachman et al. v. Belasco, 2 Cir., 224 F. 817; Frankel v. Irwin et al., D.C., 34 F.2d 142; Eisman et al. v. Samuel Goldwyn, Inc., et al., D.C., 23 F.Supp. 519.

As the courts have often said, infringement of a work of imagination is determined by the result of comparative reading, on the imagination of the reader, not by a dissection of sentences and incidents. Frankel v. Irwin, supra.

With this rule in mind, I have read and studied the two plays and have tested them in the light of the foregoing decisions. I have to admit that I find no such evidence of similarities which would lead me to believe that defendants used plaintiff's play when they wrote theirs. As a matter of fact, I find more differences than resemblances, and I therefore must hold that plaintiff has failed to make out a case.

True the story in each is of the stage, of actresses, playwrights and managers. True the first act in each play takes place in a boarding house for young actresses. This does not point to piracy. It is a common topic; many plays and stories have been written about the stage and about the struggles of young actresses, their successes and failures.

Similarity of background does not give rise to an action for infringement. Both defendants Kaufman and Ferber were familiar with the theatre. Both in the past had written plays of and concerning the theatre. Plays which were outstanding successes. That both authors should pick out an actual boarding house for actresses is not uncommon nor strange. Miss Ferber knew of this place and gave the source of her knowledge. I have no reason to disbelieve her.

After the first act the plays are entirely different. There are resemblances here and there in the first act; not in plot or dramatic treatment but in incidental details. Here and there are types of the theatre, in each, which are more or less common in the sense that they are ordinary. Just about what one would expect of authors writing of a common topic would follow. There is nothing strange or unusual in this. Neither is there anything which points to piracy. Whatever resemblances I find do not impress me as infringement.

In the large aspect, I find the two plays entirely dissimilar. Defendants' play runs along smoothly with one main theme which impresses me as the "stage vs. movies". In carrying out this theme the story depicts the life of a young actress, Terry Randall. Her life is depicted; her struggles; her ambitions; her sacrifices; her ultimate success. The play is built around her. Her one ambition is to become a successful actress. In the last act, the intimation is that she has reached her goal and also gained the love of a good man. Through it all she remains true to her ideals and it might be added retains her virtue.

The heroine of plaintiff's play, Billie-Katherine, is also a young actress. She is also struggling along without much success until she meets, very early in the play, Robert Wainwright, a successful playwright, who has taken a fancy to the young girl. In the first act he calls for her to take her to dinner. The girls at the boarding house warn her what she may expect at his hands. In the second act we find her a successful actress; not because she has any love of the stage; not because of an unfaltering ambition to succeed; not because of any sacrifices on her part except

the sacrifice of her virtue. She has taken the easy way, not the hard way. We find her living with the playwright as his mistress.

In the third act we find her married to Wainwright. She is about to have a baby but regrets having married; her chief complaint being that when she was Wainwright's mistress she had some hold over him but after marriage, when he had her safely tied with the marriage knot, he felt he could then pursue his love affairs without hindrance.

I find no similarity between these two main characters or the story woven about them. Terry Randall typifies the young American girl who could serve as an inspiration for others with theatrical ambitions. While the other is portrayed as the mistress of her playwright and later as a dissatisfied wife.

In plaintiff's play the life story of Elizabeth Thomas is depicted. The second act of the play takes place in her penthouse. She has had a checkered career; married, divorced and finally we find her living with a third-rate actor. In the play she kills her paramour and herself. A large part of the second act is built around her. I find no such character in defendants' play.

Space will not permit me to discuss the other characters. Suffice it to say that I am unable to find that there is such a great resemblance between them that it creates a suspicion of copying.

The themes of the plays are not alike. There is about plaintiff's play an air of defeatism, with the various characters rather making a mess of their lives. Plaintiff's play is filled with sex problems, chastity in homes, moral codes, drink, drugs, much bad philosophy and language, which one, perhaps a little old-fashioned, thinks rather out of place on a public stage; all of which are more or less loosely interwoven through it.

I find this absent from defendants' play which has a rather well defined theme with a moral—that a young actress may achieve success on the stage by her own efforts without losing her ideals and her virtue.

Plaintiff insists that each play has a common theme—"stage vs. movies". I cannot see that as far as plaintiff's play is concerned. The heroine in plaintiff's play it is true refuses to consider the movies but only from a physical reason or perhaps from a mental shock. She had been in the Apex fire. Her chum had been burned to death in that fire. She herself barely escaped. She received such a shock that she could never bring herself to work in the movies. The heroine of defendants' play, however, had an ambition to be an actress. She would allow nothing to deter her from this accomplishment, not even a temptive offer from Hollywood caused her to deviate from the goal which she held out for herself.

I find little in common, at least anything of substance, in the stories told by the two plays, in the motivation of the characters, in the plot, in complication nor in dramatic conflicts.

■ I therefore find that the play Stage Door was written and composed by the defendants Ferber and Kaufman during the first half of the year 1936; that subsequently the play was produced and exhibited on the stage of the Music Box Theatre in New York City; that defendant Sam H. Harris was the producer with the aid and assistance of the other two defendants. I further find that when they wrote their play the defendants Ferber and Kaufman had never seen plaintiff's play; that they used no part of it in the writing and preparation of their play; that in writing the play and producing it none of the defendants Ferber, Kaufman and/or Harris infringed plaintiff's copyrighted work.

A decree should be entered awarding judgment for the defendants herein.

If findings of fact and conclusions of law are submitted, they should be triple-spaced typed, and on five days notice. The opposing counsel, if he be so disposed, should submit, on two days notice, criticisms of the proposed findings, as counter findings will avail him nothing.