[Civ. No. 17228. Second Dist., Div. Three. Aug. 18, 1950.]

EDWARD KOVACS, Respondent, v. MUTUAL BROAD-CASTING SYSTEM, INC. (a Corporation) et al., Appellants.

Crider, Runkle & Tilson and Clarence B. Runkle for Appellants.

Herzbrun, Chantry & Gleis and Allen M. Singer for Respondent.

VALLÉE, J.—Appeal by defendants from a judgment in favor of plaintiff for $25,000 entered upon a verdict of a jury in an action based upon the alleged appropriation by defendants of a radio program and format which plaintiff claims to have originated.

The complaint contains two causes of action. The first, based upon the alleged plagiarism of a common-law copyright, alleges that: during 1944 plaintiff "originated and caused to be prepared and composed and written an original script and radio program format for a radio program entitled 'Your Heart's Desire,' " and caused the script to be transcribed upon records for the purpose of submission to prospective sponsors, advertising agencies and broadcasting companies; since 1944 defendants have been fully informed of the nature of plaintiff's radio program, and about September 9, 1946, "sold, produced and presented a radio program substantially copying, embodying and using plaintiff's radio program and radio format without the knowledge, authority and consent of the plaintiff" under the title "Heart's Desire," which program was and is being broadcast nationally over the radio stations of Mutual Broadcasting System, Inc.; defendants appropriated the benefits and profits to which the plaintiff is solely and exclusively entitled; the amount of such profits and benefits received by defendants is unknown to plaintiff and he is entitled to an accounting for said profits and benefits alleged on information and belief to amount to more than $200,000.

The second cause of action is based on the theory of breach of an implied contract. The prayer sought an injunction, an accounting, and the reasonable value of the use of the radio program.

The principal defendant is Raymond R. Morgan, called Morgan, who is the sole owner of, and doing business as, Raymond R. Morgan Company. Defendant Mutual Broadcasting System, Inc., called Mutual, operates a national radio network. Defendant Thomas S. Lee Enterprises, Inc., called Don Lee, is the western outlet for Mutual. Defendant Ben Alexander was the master of ceremonies employed and furnished by Morgan. Morgan sold his radio program, "Heart's Desire," to Mutual as a package program, i.e., Morgan to provide everything connected with the program. It was broadcast over Mutual nationally five days a week for one-half hour. Originally it was a sustaining program, i.e., solely at the expense of Mutual. Later, half of each broadcast, or 15 minutes, was sold to defendant Phillip Morris & Co., Ltd. The program was on the air for approximately two years. It was discontinued about the time of trial.

Plaintiff conceived the idea for his radio program in 1942 or 1943. At his request, Maurice Lawrence, a writer, wrote a

script for a sample broadcast of the idea, entitled "Your Heart's Desire." A recording of this sample broadcast was made in Hollywood on September 21, 1944.

Plaintiff testified that shortly after the recording he played his transcription "to the head of KGFJ, and he liked it and called Mrs. Kershner. She liked it and sent the program to the head of the sales department, a man by the name of McCrillis. He played the program. He liked the show and he told me that the show is only good for coast to coast. Therefore he will take the show personally to the Mutual Broadcasting Company because he thought that would be the best bet, and he has the best entre there. . . . I got it back about four weeks later." McCrillis testified he took the transcription to Leon Wray, an account executive of Don Lee and Mutual. Wray had formerly worked for KGFJ and McCrillis knew him "real well . . . I just took it to him and told him I would like to have him listen to it and see what he thought of it; see if he could do anything with it." McCrillis was unable to say how long he left it with Wray—"it might have been a week, two weeks, three weeks."

Plaintiff then delivered the transcription to James Strain, program director of station KMTR. At that time KMTR was changing its call letters to KLAC. Strain liked the show and played it for Don Fedderson, the head of the station. Defendant Morgan at that time was handling the publicity and advertising for KMTR in connection with the change of the radio call letters, and his contact man, a Mr. Raisback, was at KMTR on several occasions during this period. The transcription remained at KMTR about five months, when it was sent to plaintiff who was in New York. He took it to Kenny Delmar (Senator Claghorn on the Fred Allen show), who at that time was looking for a radio show to be broadcast over the CBS network. While he was negotiating with Delmar in the fall of 1946 he first learned of defendants' program "Heart's Desire" being broadcast over Mutual. Thereafter he made no attempt to sell his radio program and format because it was "worthless."

Plaintiff's script and transcription start with the following announcement to the radio audience: "Your hearts desire program . . . Have you a desire that lies secretly within your heart . . . something that you have always dreamt about or wanted to do . . . of course, you have, who HASN'T—Well on this new thrilling and amazing program, the makers of Champion cigarettes [a fictitious sponsor] may make that

very wish come true . . . simply write in and tell us about [it] . . . sing with a leading band . . . dance with Fred Astaire or Ginger Rogers . . . perhaps you would like to play a love scene with Robert Young or Hedy Lamarr . . . have a dinner and dancing date with a well known personality who knows perhaps these and any other desires may be yours for the asking.'' The writers of the winning letters are then introduced separately. The master of ceremonies reads the letter of each (supposedly written in response to a previous solicitation as indicated in the announcement) in which he or she has expressed his or her heart's desire. The heart's desire of each is then gratified either on stage or in such manner as may be necessary to gratify it. The introduction of each letter writer is preceded and followed by humorous comments by the master of ceremonies. Each person whose letter is selected and who participates in the show is given a carton of Champion cigarettes and a war bond.

Defendants' program is as follows: It begins with the following announcement: ''WHAT'S YOUR HEART'S DESIRE? I'm asking you thousands of listeners at home . . . all over this big network. This is your program! Would you like to have a vacuum cleaner? A pressure cooker? A mattress? A box spring? An electric stove? An automatic ironer? A percolator? It's yours for the asking . . . all you have to do is write me a letter . . . just tell me . . . WHAT IS YOUR HEART'S DESIRE? . . . This is Ben Alexander, folks, starting a new week doing everything I can to make your dreams come true . . . to get you your HEART'S DESIRE! And don't forget, all you listeners at home, this is your program! That's why we're on the air . . . this show was designed for *you* . . . the great *listening audience at home!* It's a pleasure for me to grant you your Heart's Desires but you've got to do your part. And you know what that is? Just simply write me a letter telling me what you want. But write in an interesting way . . . not just an ordinary letter like . . . well, say, like you want a stove . . . tell me why you want a stove . . . are you cooking over a camp fire? Is it funny? Or is it tragic? Get the idea? It's so simple to write an interesting letter. Now I'll give you the idea of how this show works. The studio here in Hollywood is crammed full of swell people who are willing to help me out. You realize I couldn't begin to read all of your letters myself, so these nice folks are going to open and read your letters for me. They're ready and anxious to start to act for you, to help you

get YOUR HEART'S DESIRE!'' The studio audience is then asked whether there are any letters among those they have opened and read asking for a certain item mentioned by the master of ceremonies. If so, the member of the studio audience is asked to explain the letter over the microphone. If there are several letters requesting the same item, the winning letter is chosen on a contest basis through audience applause. The writer of the letter is then granted his or her heart's desire, and the one explaining the winning letter receives a gift. Interspersed throughout the program are humorous and *ad lib* comments by the master of ceremonies. Defendants' program was first broadcast on September 9, 1946.

Defendants claim their program was originated by Ray Maypole and Charles Morin; that Morin suggested Morgan as the man to see to exploit it; and that they explained the program idea to Morgan about the first of August, 1946. Morgan testified that the program idea outlined to him was ''based on the radio audience sending in letters that had things they wanted to get, in which the hero of the program, as I saw it . . . would not be the person, the hero would be the letter,'' and the persons who received the gifts ''would not be the comparatively few people in the studio audience, but the great unlimited audience that we had out in the homes. They had the chance to participate in these gift give-aways . . . *and that to my knowledge was something that had never happened before in radio*. That was almost the exact opposite of what we were doing on the QUEEN FOR A DAY program. In QUEEN FOR A DAY, in order to become Queen, or in order to get a gift, you must be a member of the audience; but the poor little lady in the house listening to the program would have no chance to receive anything, or get a present. *That was the great difference*,'' and the idea of having the studio audience open the mail was a ''great idea.'' (Italics added.) Shortly thereafter Morgan went to New York and brought the program idea to the attention of Mutual. Maypole and Morgan had no script for the program at this time. Morgan testified that even up to the time of the trial broadcast they had no script for the program. ''We had nothing except the idea that the letters would be good performers . . . we had nothing—hardly a scrap of paper, hardly a few notes.''

Appellants' contentions are: 1. Plaintiff has no protectible interest in his radio program and format because it lacks originality and novelty. 2. The evidence is insufficient to justify the jury's implied finding of similarity or access from

which an inference of copying may be drawn. 3. The evidence fails to prove any damages or recovery pleaded in the first cause of action. 4. The evidence fails to sustain plaintiff's second cause of action based upon an implied contract.

In support of their first contention, defendants argue that plaintiff cannot assert ownership in the program methods, devices, or combinations thereof, used in his program because they were already in the public domain. They point out that the practice of soliciting letters from the listening public for use in connection with a radio program, the element of contest between letter writers or the letters themselves, the device of gratifying desires (commonly known as the give-away type of radio program), and the idea of audience participation, had been used in radio prior to plaintiff's use of them, and are similar to such previous programs as "Help Thy Neighbor," "Chan Du, the Magician," "Adventures of Black and Blue," "What's on Your Mind," "Do You Want To Be An Actor," and "Queen for a Day." Plaintiff asserts his combination of materials and ideas in a format for a radio program is original and novel.

■ If a format for a radio program is original and novel, it may constitute a protectible "product of the mind." (Civ. Code, § 980; *Stanley* v. *Columbia Broadcasting System, Inc.,* 35 Cal.2d 653 [221 P.2d 73]; *Yadkoe* v. *Fields,* 66 Cal.App. 2d 150, 159 [151 P.2d 906]; *Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal.App.2d 556, 561 [90 P.2d 371].) "An author who takes existing materials from sources common to all writers, arranges and combines them in a new form, giving them an application unknown before, is entitled to a copyright, notwithstanding the fact that he may have borrowed much of his materials and ideas from others, provided they are assembled in a different manner and combined for a different purpose, and his plan and arrangement are a real improvement upon existing modes; for the labor of making these selections, arrangements and combinations has entailed the exercise of skill, discretion and creative effort. (*Edwards & Deutsch Lithographing Co.* v. *Boorman,* 15 F.2d 35.) 'If the author has accomplished a unique and useful result through the application of intellectual labor and literary or artistic skill, his work is entitled to a copyright which will protect the plan, arrangement and combination of the materials therein, even though all the materials of such work, or some parts of its plan, or the arrangement and modes of illustrating the subject matter thereof, may be found separately, or in a

different form or setting, or in a different combination in other distinct works.' (Ball, The Law of Copyright and Literary Property, p. 247.) (*Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal.App.2d 556 [90 P.2d 371].)'' (*Stanley* v. *Columbia Broadcasting System,* 35 Cal.2d 653, 664 [221 P.2d 73].)

The question of originality and novelty is one of fact for the jury. (*Stanley* v. *Columbia Broadcasting System,* 35 Cal.2d 653, 665 [221 P.2d 73].)

This issue having been determined by the jury in favor of plaintiff, the question is whether there is any substantial evidence to support its implied finding that the program was original and novel. Plaintiff's radio program is based on: (1) soliciting letters from the radio-listening public expressing their heart's desires, with no limitation as to the desires to be expressed; (2) using the letters as the foundation of the program; (3) choosing winning letters on a contest basis; (4) granting and broadcasting of the heart's desires of the winners; (5) using the catch phrase ''your heart's desire''; and (6) some of the audience participating therein. Concededly, there is nothing new or novel in the practice of soliciting letters on a radio program, or in having an element of contest between letter writers, or in the giveaway type of program, or in audience participation; yet the combination of these basic elements, with the additional innovation of soliciting letters from the listening public expressing the writer's heart's desire, and having those letters constitute the very basis of the program—the material for the show—was original and novel and had never before been done on a radio program. Morgan testified (which testimony is important in this connection because of the substantial similarities appearing in the two programs as hereinafter shown) that defendants' program was different from any other program; it was ''something that had never happened before in radio.'' Walter H. Lourie, an executive producer for Mutual, testified that Morgan said defendants' program was one ''with a tremendous mail pull and heart appeal''; the idea of fulfilling somebody's wish was ''one of the things that we liked'' about the program; the idea of fulfilling someone's heart's desire was ''warm and friendly''; it had ''heart . . . zilch, appeal, warmth.'' Ben Alexander testified that the defendants' program was different from the average give-away show in that a member of the listening public won, instead of a member of the studio audience. The foregoing

evidence, in and of itself (in view of the substantial similarity of the programs), supports the jury's implied finding that plaintiff's program was original and novel. The programs cited by defendants as being similar were shown to be distinguishable in that they merely included one or two elements which were already in the public domain and not the combination of ideas originated by plaintiff.

It is next contended that the evidence is insufficient to justify an implied finding (a) of any similarity between the two programs, and (b) of access, from which an inference of copying may be drawn.

There was no direct evidence of access. Defendants denied access and copying. Access may, however, be proved indirectly. A charge of piracy does not fail merely because the infringer was not caught in the act of copying. Access may be inferred from the surrounding circumstances or it may be found from similarities in the plan, arrangement and combination of materials, or from the identity of phraseology, or from other evidentiary facts. (Ball, Law of Copyright and Literary Property, 601, § 263; *Wilkie* v. *Santly Bros.*, (2 Cir.) 91 F.2d 978, 979; *Dam* v. *Kirk La Shelle Co.*, (2 Cir.) 175 F. 902, 907 [99 C.C.A. 392, 20 Ann.Cas. 1173, 41 L.R.A.N.S. 1002]; *Christie* v. *Harris*, (D.C.N.Y.) 47 F. Supp. 39, 40; *Simonton* v. *Gordon*, (D.C.N.Y.) 12 F.2d 116, 123.)

In *Wilkie* v. *Santly Bros., supra*, (2 Cir.) 91 F.2d 978, although there was no direct evidence of access, it was held that access could be inferred, the court saying, page 979: "Where similarities or identities are relied upon, they must do more than engender a suspicion of piracy; they must establish piracy with reasonable certainty. There was some evidence here of the possibility of physical access by the appellants; the court below did not so find. But the charge of infringement does not fail merely because the infringer is not caught in the act, for access may be inferred or found circumstantially from the plan, the arrangement, and the combination of materials contained in the composition. *Edwards & Deutsch Lithographing Co.* v. *Boorman*, 15 F.2d 35 (C.C.A. 7), certiorari denied 273 U.S. 738, 47 S.Ct. 247, 71 L.Ed. 867. . . . Internal proof of access may rest in an identity of words or in the parallel character of incidents or in a striking similarity which passes the bounds of mere accident. *General Drafting Co.* v. *Andrews*, 37 F.2d 54 (C.C.A. 2); *W. H. Anderson Co.* v. *Baldwin Law Pub. Co.*, 27 F.2d 82 (C.C.A. 6); *Simonton* v. *Gordon*, 12 F.2d 116 (D.C.S.D.N.Y.) . . .

[p. 980]. We need not consider the sufficiency of the claim that the appellant Petkere had opportunity to acquire information as to appellee's composition, since it was played and sung at exhibitions when she visited the Sound Studio, because upon analysis there is ample evidence of identities and similarities justifying the claim of plagiarism.''

Plaintiff sought to prove access through several probable sources. One was through Don Lee-Mutual radio station where his transcription had been left with Wray ''for a week, two weeks, three weeks.'' Another source was through radio station KMTR where plaintiff's transcription was left for a period of about five months and where Raisback, a Morgan employee, was in and out of the studio handling publicity and advertising.

█ Proof of substantial similarities gives rise to an inference of both access and copying. (*Sarkadi* v. *Wiman*, (2 Cir.) 135 F.2d 1002, 1003; *Wilkie* v. *Santly Bros.*, (2 Cir.) 91 F.2d 978, 979.) █ The weight to be given the inference as against direct evidence of nonaccess and noncopying is a question for the trier of fact. There can be no copying in the absence of similarity. █ Whether there are substantial similarities to give rise to an inference of access and copying is one of fact to be determined by a comparison of the two programs upon the basis of the ''impression received by the average reasonable man.'' (*Stanley* v. *Columbia Broadcasting System, Inc.*, 35 Cal.2d 653, 660-661 [221 P.2d 73]; *Harold Lloyd Corp.* v. *Witwer*, (9 Cir.) 65 F.2d 1, 18; *Nichols* v. *Universal Pictures Corp.*, (D.C.N.Y.) 34 F.2d 145, 147; *Hirsch* v. *Paramount Pictures*, (D.C.S.D. Calif.) 17 F. Supp. 816, 818; *Frankel* v. *Irwin*, (D.C.N.Y.) 34 F.2d 142, 144; *Dymow* v. *Bolton*, (2 Cir.) 11 F.2d 690, 692; Ball, Law of Copyright and Literary Property, p. 344, § 159.) The implied finding of the jury of similarity is binding upon a reviewing court if supported by substantial evidence. (*Golding* v. *R.K.O. Pictures*, 35 Cal.2d 690 [221 P.2d 95].)

█ Plaintiff's transcription and several of defendants' transcriptions were heard by the jury. The jury compared plaintiff's written script and the written script of one of defendants' broadcasts. Upon such comparison the average reasonable man could readily determine that both radio programs are substantially similar in that they are both based on material written by the listening audience expressing their heart's desires (the new and novel innovation originated

by plaintiff), revolve around the idea of gratifying "heart's desires," selecting winning letters on a contest basis, and broadcasting the gratification of the heart's desires. The average reasonable man could also readily observe substantial similarity not only in the phraseology employed in the scripts but in the general arrangement and combination of ideas. The evidence, "in the form of the two programs alone, shows that there is substantial similarity to support the verdict." (*Stanley* v. *Columbia Broadcasting System*, 35 Cal.2d 653, 662 [221 P.2d 73].) The proof of opportunity of access together with the proof of substantial similarities is sufficient to support the implied finding of access and copying.

There are, of course, certain differences in the two programs. As said in *Nichols* v. *Universal Pictures Corp.*, (2 Cir.) 45 F. 2d 119, 121 (quoted with approval in *Stanley* v. *Columbia Broadcasting System*, 35 Cal.2d 653, 662 [221 P.2d 73]: "It is of course essential to any protection of literary property, whether at common-law or under the statute, that the right cannot be limited literally to the text, else a plagiarist would escape by immaterial variations. That has never been the law, but, as soon as literal appropriation ceases to be the test, the whole matter is necessarily at large, so that, as was recently well said by a distinguished judge, the decisions cannot help much in a new case. *Fendler* v. *Morosco*, 253 N.Y. 281, 292, 171 N.E. 56." Defendants point out that the principal differences in their program from that of plaintiff are (1) the studio audience read, select and advocate the winning letters written by the listening audience (there being an additional contest between these studio advocators, the winners of which are determined by the volume of studio applause), and (2) those who send in the winning letters remain at home where they receive their gifts; while on plaintiff's program the letter writers themselves are produced at the broadcast. The first item is but the addition of another basic element already used in radio, a contest among the members of the studio audience. Having the studio audience open the letters, defendants concede, is but a "mechanical phase of the production," unimportant insofar as the essence of the program is concerned but important to a sponsor or producer because of the problem and expense attached to the handling of a large volume of mail. With regard to the second claimed difference, it may be said that irrespective of whether the writer of the winning letter remains at home or is brought to the studio to receive his heart's desire,

the important feature, originated by plaintiff, is that in both programs the winner is a member of the listening audience.

██ Appellants' contention that the evidence fails to prove any damages or recovery pleaded in the first cause of action is another way of stating that there is a variance between the pleading and the proof. Where the implied findings of the jury are supported by the evidence and it appears that the case was decided correctly on the merits, objection to a variance between the complaint and the proof which might have been obviated by an amendment of the complaint cannot be urged for the first time on appeal. (2 Cal.Jur. 279, § 89.)

██ Plaintiff, as owner, testified that the value of his program was $100,000 and that after defendants' use thereof it had no value. This testimony is sufficient to support the award of damages. (*Golding* v. *R.K.O. Pictures,* 35 Cal.2d 690, 700 [221 P.2d 95] ; *Yadkoe* v. *Fields,* 66 Cal.App.2d 150, 160-1 [151 P.2d 906] ; *Universal Pictures Co.* v. *Harold Lloyd Corp.* (9 Cir.) 162 F.2d 354, 369 ; 10 Cal.Jur. 1023, § 278 ; 3 Wigmore on Evidence, p. 48, § 716.)

Our conclusion renders it unnecessary to consider appellants' contention that the evidence fails to sustain the second cause of action.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.