Burke, J.
In this action for breach of a written contract the Appellate Division has reversed Special Term’s order granting summary judgment for the plaintiff and certified the following question—“ Was the order of this Court * * * properly made? ” We are of the opinion that a triable issue is presented, and, therefore, answer the question certified in the affirmative.
On December 7, 1953 plaintiff made a written submission of his proposed television series which he called “ The Price Is Right ”, and characterized as a “ Quiz Audience Participation ”. In this agreement the plaintiff stated that the idea was original with him but that he would abide by defendants’ ultimate determination of questions of use, priority, and originality in connection with any substantially similar idea. The agreement further stated that, if defendants find that the idea had priority and originality, payment for its use was to be negotiated.
On January 29, 1954 the parties entered into a written contract whereby plaintiff sold all his “ right title and interest in and to the ideas, format and other literary material heretofore submitted” in return for defendants’ promise to pay stipulated weekly royalties in the event of its ultimate use. Except for a warranty of originality the plaintiff did not by this agreement abdicate his right to contest the question of use and priority. It is significant, therefore, that this agreement expressly stated that it was entire and complete and embodied all understandings between the parties.
Three years later (Nov. 1, 1956) the parties entered into the written agreement upon which this action is founded. By this covenant the defendants (for $1,000) purchased outright *12 all rights in and to the title “ The Price Is Right ”. Although this sum was to be in lieu of any payment under the prior agreement, the defendants further stipulated that: “in the event that we should at any time broadcast programs based upon the ideas, format and other literary material heretofore submitted and sold by you to us (exclusive however of the title ‘ The Price Is Right ’ being sold by you to us hereunder), we agree to make payments to you in accordance with the terms and conditions of said prior written agreement.”
Approximately one month later the program “ The Price Is Right ’ ’, which plaintiff claims is a use of his submission, was broadcast by defendants.
The complaint alleges, inter alia, that both plaintiff’s submission and the defendants’ program have the same basic concept, i.e., the promotion of merchandise with a fixed standard retail price, and that, therefore, the program so produced by defendants was and is based upon the ideas, format and literary material previously submitted.
Upon the motion for summary judgment both the submission and the defendants’ script and program were before the court. Special Term found that “ [cjlearly the material submitted by the plaintiff and the defendants’ program utilize a ‘ gimmick ’ in relation to the presentation of merchandise which differentiates both from every other quiz or merchandising show and that is the standard of fixed retail price.” The court found further that although there are differences in the programs ‘ ‘ they produce no real distinction in idea or combination. ’ ’ Finding, therefore, that plaintiff’s submission was “substantially lifted ” the court granted summary judgment.
The Appellate Division reversed upon a finding that issues of fact exist (1) as to whether the defendants undertook to pay for the use merely of the central idea of the plaintiff’s submission, or whether they were to pay only for the use of the ideas, format and literary material as embraced in the submission, and (2) in either event whether or not there was a user of such.
Once again we are faced with the propriety of the granting of summary judgment, and our sole inquiry, therefore, is to the existence of a material issue of fact. It now seems well established that if the issue is fairly debatable a motion for summary judgment must be denied (Falk v. Goodman, 7 N Y *13 2d 87, 91; Sillman v. Twentieth Century-Fox Film Corp., 3 N Y 2d 395, 404).
However, we believe the Appellate Division was wrong in making its first finding (supra), i.e., that an issue of fact exists as to whether the agreement was to pay only for the central idea or merely for the material as presented. In our opinion it would be a perverse construction that would allow the defendants to substantially pirate the fruits of the plaintiff’s creation merely by rearranging its organization and main theme. It surely could not have been within the contemplation of the parties to allow remuneration solely upon a literal use of the submission. No matter how ambiguous the intention of the parties may have been prior to November 1, 1956, it was certainly dispelled by the agreement entered into that day. It provided in simple and unequivocal terms that the plaintiff would be paid if defendants at any time broadcast programs based upon the ideas, format and other literary material submitted. Since the construction of an unambiguous written contract is a question of law for the court (Lachs v. Fidelity & Cas. Co., 306 N. Y. 357; Bethlehem Steel Co. v. Turner Constr. Co., 2 N Y 2d 456; Bonime v. Cummings, 5 A D 2d 976, 977), it was, therefore, proper for Special Term to so construe the agreement.
We disagree, however, with the Special Term determination of the question of user with which we will now deal. A reading of the entire record convinces us that the question of user does raise a triable issue of fact. Although in an action for the appropriation of literary material this question may be raised (by either party) on a motion for summary judgment (Rules Civ. Prac., rule 113), this is not to say that there must- necessarily be a final determination simply because both scripts are before the court. Of course, if the similarity or dissimilarity is so overwhelming, the matter may be disposed of summarily. However, this literal-or-no-application is not the test ordinarily adaptable. Quite often the plagiarism, if any, is deftly disguised, or not substantial, and, therefore, not necessarily revealed or found illusory on what might seem to be a perusal examination on the motion for summary judgment. Each case must, under these circumstances, be taken in conjunction with its peculiar set of facts (Fendler v. Morosco, 253 N. Y. 281, 292).
*14 Although the mere presence of dissimilarities need not bar a summary disposition, we cannot agree that they were here insignificant as a matter of law. It will be apparent from the following synopsis of both scripts that the issue, if not seriously questionable, is at least arguable.

Defendants’ Program

An article of merchandise, the retail price of which is not revealed, is exhibited to a panel of four contestants, who, in an effort to estimate the price, proceed to bid for the item. At the conclusion of the bidding the retail price is made known. The article is then awarded to the contestant who comes closest, however, without exceeding the retail price. This procedure is thereafter repeated, and at the conclusion of the program the contestant who has accumulated the most (dollar wise) is invited to participate on the next program. An added attraction for the benefit of the home viewing audience is the “ Showcase ” contest, wherein a multitude of articles are displayed. The mail order participant who comes closest, without exceeding, the total value of all items displayed receives all the merchandise without charge.

Plaintiff’s Submission

A sole participant selects an item from a group of articles displayed at retail price. The master of ceremonies then asks four questions and, each time a correct answer is given, the price is automatically reduced to half. For example, if the four questions are answered correctly, a $200 item is reduced to $12.50. The participant may purchase the article at any stage of the questioning, and the money received is, at the show’s conclusion, donated to a charity. This procedure is repeated with two subsequent contestants. The fourth contestant is a representative of a charitable organization. He, too, is asked four questions, but, instead of receiving merchandise at a reduced price, a special jackpot is multiplied by two with each correct answer.
In order to demonstrate that defendants’ program is based on plaintiff’s submission, the plaintiff’s moving papers argue the substantial similarities, the most significant of which is that the “ essential ingredient ” or “ central theme ” of both is the *15 use of retail price. In addition the plaintiff advances the defendants’ admission that the program so broadcast was the ‘ ‘ first show we had where the retail price was the central theme ”.
On the other hand the defendant Goodson, an alleged expert on audience participation programs, averred that there was ‘ no substantial similarity between the two programs ’ ’. He analyzed and emphasized the differences, and stated that, rather than fixed retail price, the central theme of plaintiff’s work “ is that of a quiz program in which merchandise is used as a ‘ gimmick ’ to differentiate the program from every other quiz program on the air ”.
In addition the defendants submitted an affidavit executed by the producer and alleged originator of defendants’ program. He certified that he created this program under its original title “ Auctionaire ”.
We are inclined to opine that plaintiff’s theme, masked in dissimilarities, was “ substantially lifted ”. However, although we agree that “ no plagiarist can excuse the wrong by showing how much of his work he did not pirate ’ ’, it cannot be said that the differences here do not at least raise an issue for the jury. We are constrained, therefore, to affirm the order denying summary judgment.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the question certified answered in the affirmative.