Benjamin H. **HERWITZ**, Plaintiff,

v.

**NATIONAL BROADCASTING COMPANY, Inc., American Broadcasting-Paramount Theatres, Inc., Sterling Drug Inc., Glamorene, Inc., Mogen David Wine Corporation, Jan Murray, Jantone Enterprises, Inc. and William Morris Agency, Inc., Defendants.**

United States District Court
S. D. New York.
May 2, 1962.

Feldman, Kramer, Bam, Nessen & Cowett, New York City, for plaintiff; Foster Bam, Maurice N. Nessen, New York City, of counsel.

Coudert Brothers, New York City, for defendants other than Glamorene, Inc., Gerald J. Dunworth, Carleton G. Eldridge, Jr., Eugene L. Girden, New York City, of counsel.

LEONARD P. MOORE, Circuit Judge (sitting by designation).

This is an action for infringement of a common law copyright and unfair competition brought by Benjamin Herwitz, a citizen of the State of Massachusetts. The defendants are seven corporations and Jan Murray, all of whom were associated in some way with the television program "Treasure Hunt". They are all citizens of states other than Massachusetts.

Plaintiff had had no experience or connection with the entertainment industry when during the summer of 1945 he formulated the idea of a weekly radio program which he entitled "This is Your Birthday Party". It was to be an audience participation show, namely, the persons to be interviewed would be selected from the studio audience by lot. Each interview would be climaxed by a "gift auction". The participant would select a birthday present from a pile of packages. The master of ceremonies (emcee) would bid a certain amount of cash for the unknown contents of the packages which might be anything from a lollipop to a diamond ring, and the participant could take either the box or the cash. The element of chance presented thereby was the basic element of the "birthday party" program.

Plaintiff then communicated with Aaron Steiner, a New York artist's repre-

sentative and producer. At a conference, it was agreed that Steiner would have the exclusive right to handle plaintiff's radio program idea and that he could use his best judgment in developing it for sale. Steiner was to package [1] the program and to talk to various people in agencies or networks in order to present the idea orally. Several parties were interested and requested written outlines. In these written presentations Steiner added a quiz element to the interview with the participants. One agency entered into an option agreement with regard to the program in February of 1946, but the option was allowed to lapse.

In the spring of 1948 plaintiff was notified by Steiner that the program idea had been licensed on a royalty basis to The Biow Company, an advertising agency. The agency had preferred this arrangement instead of having the program packaged by Steiner. The agreement with Biow culminated in the radio program, "Everybody Wins", which was broadcast over the CBS network on Friday evenings from 9:00 to 9:30 for a period of 26 weeks beginning in April of 1948. During this time, Steiner received $150 per week royalty, which he divided with the plaintiff. The basic format of the program may be summarized briefly. Each contestant was asked four or five questions all relating to a specific subject. The questions were selected from those submitted by home listeners. The person submitting the questions received a cash prize for questions answered incorrectly by contestants. Contestants who answered all the questions correctly were entitled to pick a box from a table of wrapped packages. The emcee then made a cash bid for the unknown contents of the box, and the contestant was given the choice of the contents or the cash. This element of chance was, of course, the high point of the program.

After Steiner signed the original contract with the Biow agency, the agency assigned an employee, Bruce Dodge, to work with him as producer. Dodge staged four or five "run throughs" in front of a studio audience, and when the program was in acceptable form it went on the air, sponsored by Philip Morris. Dodge was the agency representative on the program; he obtained the prizes and directed the commercials. Steiner worked with the Biow personnel in developing the program and attended preliminary rehearsals. He maintained his interest in the program after it went on the air and attended the rehearsals of all shows emanating from New York City.

In October, 1948, Biow notified Steiner that for the present they had no further plans to make use of the program idea, thus terminating royalty payments under the ten-year exclusive contract. Shortly thereafter Steiner obtained from Biow an agreement allowing him to license the idea to others, although Biow retained the right to resume using the idea at any time the idea was not licensed to others. However, Steiner's attempts to sell the program to other advertising agencies and networks were unsuccessful. In 1949 the former emcee of "Everybody Wins" was interested in trying to do something with the format of the program, and he was referred to plaintiff. An agreement was reached, and the idea of "Everybody Wins" was given a one-night showing on television under another name but the program was not sold.

Meanwhile, Steiner also took some steps to develop the plaintiff's idea for commercial television which was just then developing. Nothing came of his efforts, however, until 1955. Steiner had maintained relations with Biow and had sent them an outline of a television program using the idea. They called him for a conference, which resulted in his granting them an option on September 2, 1955. Before executing the option, Steiner informed plaintiff of the renewed interest, and they entered into a new contract

---

authorizing Steiner to license the "auction gimmick" for use on radio or television. Biow's vice president in charge of television informed Steiner that he thought three of the agency's clients were possible sponsors and that Biow would be interested in having Steiner package the program. A television presentation was prepared but before anything more was done about selling the program, the Biow agency went out of business.

The vice president who had worked with Steiner left Biow in February or March, 1956. He informed Steiner that he was going to open up his own production office, and that he was interested in packaging the program as Steiner's partner. Steiner agreed but no further effort was made to develop the program, "Everybody Wins". The program "Treasure Hunt" appeared on the ABC network in September, 1956, and in January, 1957, Steiner received a letter from his partner stating that in view of the fact that "Treasure Hunt" was using the same program idea, they might as well forget trying to package "Everybody Wins".

"Treasure Hunt" was packaged and produced by defendant Jantone Enterprises, Inc., of which defendant Jan Murray was president. Murray had known Dodge for several years when they formed an informal partnership in the summer of 1953 for the purpose of creating television programs. Dodge, who had produced the radio program "Everybody Wins" was now employed by another advertising agency and was assigned to the program "Dollar a Second", which starred Murray. The two men often discussed ideas in-between rehearsal and air time. The program "Treasure Hunt" evolved out of this partnership. According to the testimony of defendant Murray, the only idea that Dodge contributed to the format Murray developed was a grab bag suggestion with "different packages or boxes or what not on the stage and the contestant picks one, and in each one would be various types of prizes." Murray stated that this idea eventually inspired him to think of using treasure

chests, and that he got the idea of offering the contestant a choice between the unknown contents of the chest and a cash bid from another idea used on "Dollar a Second". Just before "Treasure Hunt" was sold, Murray informed Dodge of the pending sale and bought out Dodge's interest for $10,000.

The basic format of "Treasure Hunt" was very similar to that of "Everybody Wins". On "Treasure Hunt", two contestants competed with each other in answering questions on a specific subject for the privilege of going on a treasure hunt. The winner selected a chest from a large number of identical "treasure chests", and then selected one of a number of sealed envelopes containing cash bids. At this point the contestant had to choose between the unknown contents of the chest and the cash. One chest contained *the* treasure of $25,000 (the amount when the show first appeared), and the other boxes contained various items, some of which were very valuable and some of which were worthless for all practical purposes.

██ On these facts, plaintiff argues that the basic idea or format of the program he claims to have originated was protected by a common law copyright and that "Treasure Hunt" copied plaintiff's idea and format. Plaintiff's case is weak in at least two respects. First, plaintiff must establish copying by a preponderance of the evidence. Copying is normally shown by establishing access and similarity. See Arc Music Corp. v. Bobby Lee, 2 Cir. 1961, 296 F.2d 186. Access there was. Plaintiff's program was on the air for 26 weeks, and Dodge, who produced "Everybody Wins", was Murray's partner at the time "Treasure Hunt" was developed seven years later. A recording of one of the radio programs and a movie of one of the television programs introduced in evidence reveal some similarity between "Everybody Wins" and "Treasure Hunt" insofar as the idea of choosing between the known amount of cash and the unknown contents of the box are utilized. However, in determining whether there was sufficient similarity to

establish copying, it must be remembered that there is nothing particularly new or novel about any aspect of either of these programs except the quandary of having to choose between a prize of unknown value and a specific amount of cash. "Grab bags" and "treasure hunts" are concepts familiar to most children in our society, and bidding or playing against the Bank is the age-old basis for many gambling games—particularly "Vingt-et-Un" (Twenty-one). Furthermore, the programs differed in many details such as name, how the amount of the bid was determined (whether by the emcee or by the contestant picking an envelope) and in whether the contestant won a chance at the big prize by answering all his questions correctly or merely by answering more questions correctly than another contestant against whom he was pitted. Thus there is the question of whether the basic similarity of the program formats, discounted by the relative lack of originality and the difference in detail, establishes by a "preponderance" of the evidence that the testimony indicating that Murray created rather than copied the basic format of "Treasure Hunt" was false. However, we need not struggle with the somewhat metaphysical problem of weighing the persuasiveness of permissible inferences because plaintiff's case fails in a legal aspect.

▇ To recover, plaintiff must show that he had a protectible property interest. Ideas as such are not subject to copyright. Nichols v. Universal Pictures Corp., 2 Cir., 1930, 45 F.2d 119, 121 (L. Hand, J.), cert. denied, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931). A copyright does not pre-empt the field as against others who choose a different means of expressing the same idea. Alexander v. Irving Trust Co., 132 F.Supp. 364, 367 (S.D.N.Y.1955), aff'd on the opinion below, 2 Cir., 1955, 228 F.2d 221, cert. denied, 350 U.S. 996, 76 S.Ct. 545, 100 L.Ed. 860 (1956). However, there may be a protectible interest in an idea or combination of ideas which is reduced to "concrete" form. Even then it is only the form in which the ideas are expressed that is protected; the law does not award the originator a monopoly in the ideas themselves. To the courts is assigned the difficult task of drawing a line between expression and what is expressed.

▇ Infringement of a common law copyright is a tort, commonly called plagiarism. The first cases allowing recovery for the misappropriation of program ideas were premised upon the theory of express or implied contract. The only appellate decision cited by plaintiff allowing recovery in tort for plagiarism of a combination of program ideas is Kovacs v. Mutual Broadcasting System, 99 Cal. App.2d 56, 221 P.2d 108 (1950). The court there affirmed a jury verdict for plaintiff, holding that plaintiff's format for a radio program contained a combination of ideas which were novel and original, that defendant had access to it, and that there were substantial similarities between it and the defendant's program. They analyzed the plaintiff's program as containing the following elements: (1) soliciting letters from the radio audience expressing their heart's desires; (2) using the letters as the foundation of the program; (3) choosing winning letters on a contest basis; (4) granting the heart's desires of the winners; (5) audience participation; and (6) using and emphasizing the program title, "Your Heart's Desire." The defendant's program was entitled, "Heart's Desire", and the program format was substantially similar to plaintiff's. In holding that the plaintiff had a protectible interest under the California Civil Code, the court stated:

> "Concededly, there is nothing new or novel in the practice of soliciting letters on a radio program, or in having an element of contest between letter writers, or in the give-away type of program, or in audience participation; yet the combination of these basic elements, with the additional innovation of soliciting letters from the listening public expressing the writer's heart's desire, and having those letters constitute the

very basis of the program—the material for the show—was original and novel and had never before been done on a radio program. * * * The programs cited by defendants as being similar * * * merely included one or two elements which were already in the public domain and not the combination of ideas originated by plaintiff." [221 P.2d at 113.]

See also Kurlan v. C. B. S., 40 Cal.2d 799, 256 P.2d 962 (1953), where the court held that a complaint alleging that the idea and format of the radio series, "My Friend Irma", was copied from a program submitted by the plaintiff stated a cause of action for plagiarism. As to the effect of the subsequent amendment of the California Civil Code on the above decisions, see also Weitzenkorn v. Lesser, 40 Cal.2d 778, 256 P.2d 947 (1953).

■ The law of New York allows recovery on a theory of express or implied contract for the misappropriation of program ideas. See, e. g., Stone v. Goodson, 8 N.Y.2d 8, 200 N.Y.S.2d 627, 167 N.E.2d 328 (1960), involving the television series "The Price is Right". However, we are aware of no New York cases holding that there may be a protectible property interest in a mere combination of ideas for a program such that there may be recovery in tort for plagiarism. Nor is there sufficient authority for this proposition so that we may fairly infer that a New York court would so hold if the question were presented to it.

Furthermore, here we are dealing with a "gimmick" which is practically an abstract idea, rather than the concrete expression of a combination of ideas. As plaintiff stressed throughout the trial, the single important element in his program was the dilemma of a contestant having to choose between a specific amount of cash and a prize of unknown value. Stated in this manner, this is certainly nothing more than an abstract idea. Plaintiff concedes, as he must, that a mere idea is not a property interest protected by common law copyright. Assuming, for the moment, that the cash-or-chest dilemma in "Treasure Hunt" was consciously taken from "Everybody Wins", a holding that this constitutes the tort of plagiarism would seem to result in protecting an abstract idea.

■■ I conclude that plaintiff's idea was not a property interest protected by common law copyright under either the law of New York or under the common law of copyright generally. Thus plaintiff cannot recover for plagiarism. It seems equally clear that plaintiff has failed to state a cause of action for unfair competition. Even if "Treasure Hunt" were based on an idea previously used in "Everybody Wins", and even if it could be said that Murray's program was in competition with the plaintiff's proposed television series, there was nothing "unfair" about the defendants' actions as that word has traditionally been used in the law of unfair competition.

This opinion shall serve in place of findings of fact and conclusions of law in accordance with Rule 52(a), F.R.Civ. P., 28 U.S.C.A.

Judgment for defendants. No costs.