West 92nd Assoc. LLC v Hussein (2024 NY Slip Op 24035)

[*1]

West 92nd Assoc. LLC v Hussein

2024 NY Slip Op 24035

Decided on February 8, 2024

Civil Court Of The City Of New York, New York County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 8, 2024
Civil Court of the City of New York, New York County

West 92nd Associates LLC, Petitioner,

against
Maher Hussein, "JOHN DOE" AND"JANE DOE," Respondent(s).

Index No. 313357-23

Belkin Burden Goldman, LLP (Daniel Patrick Phillips, Esq.), for the petitioner
Fairchild Law, LLC (Steven Royal Fairchild, Esq.), for the respondent

Karen May Bacdayan, J.

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc No: 11-34.[FN1]

PROCEDURAL HISTORY AND BACKGROUND
This is a holdover proceeding commenced against Maher Hussein ("respondent"), predicated on respondent's failure to sign a rent stabilized renewal lease. Petitioner moved for summary judgment, NYSCEF Doc No. 11, notice of motion for summary judgment (sequence 1), and respondent cross-moved for summary judgment, NYSCEF Doc No. 18, notice of cross-motion for summary judgment (sequence 2). Oral argument was held on the record twice on February 1, 2024, and decision was reserved.
There is no dispute that respondent's initial lease for the premises was executed in 2002. Nor is it disputed that respondent did not sign a renewal lease offer dated January 9, 2023. (NYSCEF Doc No. 1 at 6-8, petitioner's exhibit A to petition, renewal lease offer, and certificate of mailing dated January 10, 2023.) The parties also do not dispute that the former owner received J-51 tax benefits from approximately 2005-2016.[FN2]
The dispute arises from respondent's [*2]argument that there is not, nor has there ever been, an initial rent stabilized lease to renew; unlike "fifty" other tenants in the building who were offered "new rent stabilized leases" in or around 2013 "after petitioner "became awar[e] of his obligation to offer rent stabilized leases to all tenants due to receipt of J-51 benefits," respondent asserts no such offer was made to him. (NYSCEF Doc No. 20, Hussein affidavit ¶ 18.) Respondent avers that he "was never offered a rent stabilized lease. Never was I advised of my right to one by petitioner. No notice was ever given to me advising me of the building's receipt of the J-51 benefit." (Id. 19.)
Respondent points out that petitioner references a prior expired renewal lease in the notice of termination, and "makes numerous references" to said lease in its immediate motion. (NYSCEF Doc No. 19, respondent's attorney's affirmation ¶ 29; NYSCEF Doc No. 1, petition ¶ 6; NYSCEF Doc No. 1, notice of termination at 3-4 ["[D]uring the period of between ninety (90) and one hundred and fifty (150) days prior to the expiration of your current renewal lease, the Landlord provided you with a renewal lease form as required by law since your current renewal lease was to expire on April 30, 2023 (emphasis added).") The rent stabilized renewal lease attached to the notice of termination also states that respondent's "lease will expire on April 30, 2023." (NYSCEF Doc No. 1 at 6.) Contrarily, respondent states in his affidavit, "[i]n January of 2013, I entered into my last lease, a one year term at $2,875.00 per month (emphasis added)." (NYSCEF Doc No. 20, Hussein affidavit ¶ 17.) This statement is supported by the decision and order of the Hon. Anne Katz in a prior nonpayment proceeding to which respondent cites and petitioner distinguishes. (NYSCEF Doc No. 6, respondent's exhibit A to answer, May 4, 2021 decicion/order in Roxborough Apts. Corp. v Hussein, Civ Ct, New York County, May 4, 2021, Katz, J., index No. 071574/18.) In that decision/order, the court noted that petitioner's predecessor in interest averred to the fact that "the last lease signed between petitioner and respondent commenced February 1, 2013 and expired January 31, 2014 with a monthly rent of $2,875.00. Petitioner alleges it offered respondent a new lease with a monthly of $2,985.00 however, the lease was never executed by respondent." (NYSCEF Doc No. 6 at 4.)[FN3]

The gravamen of respondent's argument goes to the heart of petitioner's cause of action. "The lack of a lease should bar the Landlord's eviction proceeding because the eviction is premised on this non-existent lease." (NYSCEF Doc No. 19, respondent's attorney's affirmation ¶ 36.) Put another way, respondent argues, "Since there is no lease, the authority and procedure [*3]for eviction are improper and must be rejected by this Court." (Id. ¶ 38.) Respondent's attorney is correct that petitioner has nowhere argued the existence of an initial rent stabilized lease which it seeks to renew. To this point, petitioner advanced at oral argument that it is unnecessary to do so because respondent was a free-market, unregulated tenant who signed his initial lease prior to petitioner's predecessor's receipt of J-51 benefits and  but for petitioner's predecessor's failure to properly offer respondent a rent stabilized renewal lease with a rider attached notifying respondent of the receipt of J-51 tax benefits and explaining that respondent would no longer be entitled to the protections of the Rent Stabilization Law upon expiration of the tax benefits in 2016  respondent would not be a tenant who enjoys the protections of and obligations of a rent stabilized tenancy.[FN4]
It is the 2002 lease which petitioner seeks to renew. Notably, neither party has produced the lease that petitioner's predecessor testified was fully executed and expired on January 31, 2014. However, that lease is available from the NYSCEF file of the prior nonpayment case, along with respondent's leases which expired on and January 31, 2010 and January 31, 2011.[FN5]
Like the 2002 lease and renewal lease at issue herein, none of the leases attach a rider informing respondent of his protections under the Rent Stabilization Law or the expiration date of those benefits along with the J-51 tax benefits.
Alternatively, respondent argues that he had a valid reason not to sign the offered renewal lease because it sought a rent higher than that permitted by a Division of Housing and Community Renewal ("DHCR") rent reduction order ("RRO"). (NYSCEF Doc No. 8, rent reduction order effective November 1, 2021, Docket No. JV 410109 S.) However, it is not disputed that petitioner has never collected a rent higher than $2,875 (the last rent collected at the time the RRO was issued by DHCR). Respondent's other arguments center on his counterclaims of overcharge, breach of the warranty of habitability, and harassment which are unrelated to the case at bar and are severed pursuant to CPLR 407.[FN6]

In opposition, petitioner specifically addresses respondent's arguments related to the lack of a certificate of occupancy, the relevance of the May 4, 2021 decision and order in Roxborough Apartments Corp. v Hussein, supra, rent overcharge, breach of the warranty of habitability, and harassment, now moot. (See n 5.) Petitioner does not specifically address respondent's argument that, because there is no rent stabilized lease to renew, there can be no holdover proceeding predicated upon the failure to sign a renewal lease offer, nor does petitioner seriously address respondent's request for attorneys' fees.
DISCUSSION
A court may employ the drastic remedy of summary judgment only where there is no doubt as to the absence of triable issues. (Andre v Pomeroy, 35 NY2d 361, 364 [1974].) On such a motion, a court's function is to find, rather than to decide, issues of fact. (Southbridge Towers, Inc. v Renda, 21 Misc 3d 1138[A], 2008 NY Slip Op 52418[U] [Civ Ct, NY County 2008], citing Epstein v Scally, 99 AD2d 713 [1st Dept 1984].) Only upon a prima facie showing of entitlement to summary judgment, does the burden shift to the non-moving party to establish material issues of fact requiring a trial. (Vega v Restani Const. Corp., 18 NY3d 499, 503 [2012] [internal citations and quotation marks omitted].) If an issue is "fairly debatable a motion for summary judgment must be denied." (Stone v Goodson, 8 NY2d 8, 12 [1960]; FS 41-45 Tiemann Place LLC v Estrella, 38 Misc 3d 29, 30 [App Term, 1st Dept 2012) [mixed questions of law and fact regarding offer of a rent stabilized renewal lease and intent precluded summary judgment].)
The court notes that both the notice of termination and the petition, which incorporates the notice of termination, contain a material misstatement of fact, to wit, that respondent's lease expired on April 20, 2023. The court takes judicial notice of the facts determined in the prior nonpayment proceeding cited by both parties and the filed documents considered by the court when deciding petitioner's motion to dismiss and respondent's cross-motion for partial summary judgment therein. (Weinberg v Hillbrae Bldrs., Inc., 58 AD2d 546, 546 (1st Dept 1977) ["[A] court may take judicial notice of its own records" but cannot take judicial notice of controverted facts].)
In Roxborough Apartments Corp. v Hussein, the court relied on prior leases between respondent herein and petitioner's predecessor in interest in determining that there was no current lease in effect at the time the nonpayment proceeding was commenced or as of the date of that decision and order, the last of three provided leases having expired on January 31, 2014.[FN7]
These facts and leases were not controverted then, nor has either party endeavored to bring these leases to the court's attention now. Here, the only lease provided by petitioner is respondent's original 2002 lease. (NYSCEF Doc No. 15, petitioner's exhibit 2, 2002 lease.) The record in Roxborough Apartments Corp. v Hussein, as well as the record currently before the court, does not support the existence of a lease between the parties that expired on April 30, 2023, as stated [*4]in the notice of termination and petitioner's papers.[FN8]

Both parties agree that respondent is entitled to a rent stabilized renewal lease. The question is whether petitioner is able to renew respondent's free-market lease with a rent stabilized renewal lease, or if respondent must have executed an initial rent stabilized lease upon which renewal is premised.
DHCR has promulgated a lease rider that describes the rights and duties of owners and tenants as provided under the Rent Stabilization Law. The Rent Stabilization Code ("RSC") 9 NYCRR § 2522.5 (c) (1) requires in relevant part:
"For housing accommodations subject to this Code, an owner shall furnish to each tenant signing a vacancy or renewal lease, a rider in a form promulgated or approved by the DHCR, in larger type than the lease, describing the rights and duties of owners and tenants as provided for under the [Rent StabilizationLaw] (emphasis added)."
RSC 2523.5 (c) (ii) reiterates that a renewal lease must be offered utilizing the prescribed form approved by the DHCR. Reading these two sections of the RSC together, in Haberman v Nuemann, 2003 NY Slip Op 50031 (U) (App Term, 1st Dept 2003), the Appellate Term, First Department affirmed former Housing Court Judge Peter M. Wendt, who had dismissed a holdover proceeding premised on the failure of a rent stabilized tenant to sign a renewal lease offer:
"Since landlord's notice for renewal of the lease was not in the form prescribed or approved by DHCR (see Rent Stabilization Code § 2523.5 [a]), and the requisite rider promulgated by DHCR was not attached (see, Rent Stabilization Code § 2523.5 [c] [ii]), this holdover proceeding based upon tenant's alleged refusal to renew the lease does not lie (internal quotation marks omitted)." (Id., *1.)[FN9]
In 160 Eagle St., LLC v Butler, 58 Misc 3d 398, 400—401 (Civ Ct, New York County 2017), petitioner sought to terminate the tenant's rent stabilized renewal lease on the basis that the tenant did not utilize the premises as their primary residence. It was "undisputed that there [was] no initial vacancy lease." (160 Eagle St., LLC v Butler, 58 Misc 3d at 399.) The court held:
"A valid rent stabilized lease must state the rights and remedies of the parties. The [*5]renewal lease that petitioner relies on for the Golub Notice and termination of the rent stabilized tenancy is not in compliance with the RSC. It is undisputed there is no initial rent stabilized lease between the parties, and respondents never received any informational riders as required by the DHCR. The renewal lease is, in effect, a renewal of no agreement between the parties, as there is no rent stabilized lease to renew. The renewal lease is a nullity as the tenants cannot waive their rights and obligations under the RSC. It is contrary to public policy to permit the landlord to terminate the tenancy through a Golub Notice without a valid rent stabilized lease in effect." (Id. at 400-401).
The court further opined that to permit termination of a rent stabilized tenancy in such a case would be "contrary to public policy." (Id. at 401.)
Imbuing respondent's arguments here with authority, the Butler court explained:
"A renewal lease incorporates the terms and conditions of the vacancy lease. The first vacancy lease contains terms, rights and obligations required by law. The parties cannot waive their respective rights and obligations under the RSC. There are no terms and conditions, rights or obligations under the RSC that are being renewed in the parties' renewal lease. There is nothing to be renewed (internal quotation marks omitted; emphasis added)." (Id. at 401-402.)"
Here, respondent avers, and petitioner does not quarrel, that respondent did not receive a lease rider with the renewal lease offer currently under review. Thus, petitioner has admitted this pertinent fact. (See Mascoli v Mascoli, 129 AD2d 778, 780 [1st Dept 1987] ["Where a key fact appears in the movant's papers and the opposing party does not refer to it, that party is deemed to have admitted it (internal citation omitted)."]) Indeed, it appears from the record that none of respondent's leases after the receipt of J-51 tax benefits comprised a J-51 tax benefits lease rider.
For the above stated reasons, respondent has sustained its burden on his motion for summary judgment.[FN10]
Petitioner has not stated a cause of action as against respondent because a rent stabilized tenant may only be evicted based up certain enumerated grounds, and the grounds stated are not grounds provided in the law. In addition, respondent is not in possession of an initial rent stabilized lease  see Butler and Nuemann, supra — nor has petitioner "provided respondent with a renewal lease form as required by law (emphasis added)." (RSC § 2522.5 (c) (1); NYSCEF Doc No. 1, notice of termination at 3-4.) The court takes no position on what petitioner must do now to regain possession of the apartment.[FN11]

CONCLUSION
Accordingly, it is
ORDERED that petitioner's motion for summary judgment is DENIED; and it is further
ORDERED that respondent's motion for summary judgment is GRANTED and the petition is dismissed without prejudice to commencement of a proper proceeding; and it is further
ORDERED that respondent's counterclaim for attorney's fees is severed for a plenary proceeding.
This constitutes the decision and order of this court.
Dated: February 8, 2024
New York, NY
______________________________
HON. KAREN MAY BACDAYAN

Footnotes

Footnote 1:On February 5, 2024, respondent himself filed what amounts to an impermissible sur-reply without assistance of his counsel. The court has neither opened these documents nor considered them herein. NYSCEF Doc Nos. 35-40. Petitioner filed a notice of objection that same day. NYSCEF Doc No. 41.

Footnote 2:"This program, administered by the NYC Department of Housing Preservation and Development (HPD) and the NYC Department of Finance (DOF), gives tax benefits to owners who rehabilitate qualifying systems in existing buildings. . . . [In buildings that are already subject to rent stabilization] the expiration of the tax benefit period does not affect the status of the apartments, which will remain under rent regulation at the end of the tax benefit period and thereafter(bold in original). . . . [For tenants who were not previously rent stabilized but become rent stabilized upon receipt of J-51 tax benefits] owners are required to include in each lease and lease renewal a notice in at least twelve point type informing the tenant that the apartment shall become deregulated upon the expiration of the last lease entered into during the tax benefit period. . . . The failure to include this notice in all leases for the tenant in occupancy at the time the tax benefits expire means that the apartment will remain under rent regulation and the tenant can continue to renew his or her rent stabilized lease." NYS Homes and Community Renewal, Fact Sheet No. 41, available at https://hcr.ny.gov/system/files/documents/2022/07/fact-sheet-41-07-2022.pdf, last accessed February 3, 2024.

Footnote 3:Petitioner acquired the building in 2022. NYSCEF Doc No. 14, petitioner's exhibit A, deed.

Footnote 4:The court notes that this argument was made during oral argument on the record at approximately 4:45 p.m. on February 2, 2024, and was not presented to the court or respondent in petitioner's papers. 

Footnote 5: NY St Cts Elec Filing [NYSCEF] Doc No. 25, lease expiring January 31, 2010; NYSCEF Doc No. 26, lease expiring January 31, 2011, https://iapps.courts.state.ny.us/nyscef/CaseSearch [complete CAPTCHA, search by case index No. LT-071574-18/NY, click on index No. hyperlink]. NYSCEF Doc No. 19, lease expiring January 31, 2014; NYSCEF Doc No. 25, lease expiring January 31, 2010; NYSCEF Doc No. 26, lease expiring January 31, 2011.
Footnote 6:Notwithstanding that respondent's counterclaims are arguably unrelated to petitioner's cause of action, on the record at 9:41 a.m. on February 1, 2024, petitioner's oral application to withdraw its claim for a monetary judgment was granted. Respondents' claims and defenses related to petitioner's request for a monetary judgment in the amount of "$142,762.09 through July 31, 2023, and fair and reasonable value of the use and occupancy of the Apartment." The court called the parties back for clarification of their respective positions at 4:45 p.m. The parties confirmed on the record that the only two issues before this court are 1) whether the initial free-market rent lease can be renewed with a rent stabilized renewal lease (petitioner argues in the affirmative and respondent argues in the negative); and, 2) alternatively, whether petitioner's renewal lease offer was improper as it sought Rent Guidelines Board increases on respondent's agreed-upon rent of $2,875 in violation of the RRO. Respondent argues that the renewal offer is improper; petitioner argues that it is not.

Footnote 7:See n 4, supra.

Footnote 8:This alone is grounds to deny petitioner's motion for summary judgment.
Footnote 9:More recently in 125 Ct. St., LLC v Nicholson, 67 Misc 3d 28 (App Term, 2d Dept 2019) the court vacated three prior stipulations on that basis that, among other things, the landlord failed to attach a tax benefits rider to the tenant's renewal lease alerting the tenant that her rent stabilized status would expire at the end of the tax benefit period. Apropos that omission, the court found that the parties were mistaken about the regulatory status of the premises the stipulations were void as a matter of public policy "because [the] renewal lease failed to contain the notice that stabilization coverage would expire following the expiration of the tax benefit, tenant was entitled to the protection of rent-stabilized status for the duration of her tenancy (internal citations omitted)." (Id. at 33—34.)
Footnote 10:See n 8, supra.

Footnote 11:As a matter of dicta, given the developments in the law, it may be that the legislature should speak to this issue. As it stands, with the recent passage of the Housing Stability and Tenant Protection Act of 2019 ("HSTPA"), a law that amended numerous provisions of law related rent stabilized tenancies  and that was intended to expand protections for tenants  the court must assume that the legislature was aware of the laws in effect at the time of its passage, and, thus, cannot construe a cause of action that does not exist as it would be contrary to the legislative intent of the HSTPA.